**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CAMPAIGN LEGAL CENTER, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 18-cv-1771 (TSC) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>DECLARATION OF VANESSA R. BRINKMANN</u>**

I, Vanessa R. Brinkmann, declare the following to be true and correct:

1.       I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice (DOJ or Department).   In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests processed by the Initial Request Staff (IR Staff) of OIP that are in litigation.   The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and within six senior leadership offices of the Department of Justice, specifically, the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (PAO).   The IR Staff determines whether records responsive to FOIA requests exist and, if so, whether they can be released in accordance with the FOIA.   In processing such requests, the IR Staff consults with personnel in the senior leadership offices and, when appropriate, with personnel in other components within the Department of Justice, as well as with others in the Executive Branch.

2.      I make the statements herein on the basis of personal knowledge, as well as information provided to me by others within the Executive Branch of the Federal Government with knowledge of the types of records at issue in this case, and on information acquired by me in the course of performing my official duties.

### OIP's Processing of Plaintiff's FOIA Request

3.      By letter dated February 1, 2018, Plaintiff submitted a FOIA request to OIP, the Justice Management Division (JMD), and the Civil Rights Division (CRT).   Plaintiff's request sought JMD, CRT, and OAG records dating from January 20, 2017, within the following categories: (1) records to, from, or mentioning Dr. Ron Jarmin or Dr. Enrique Lamas; or (2) records containing the following phrases: "2020 census," "long form," "citizenship question," "question regarding citizenship," "ACS," "American Community Survey," "citizen voting age population," or "CVAP."   Plaintiff's FOIA request also sought expedited processing.   A copy of Plaintiff's FOIA request, dated February 1, 2018, is attached hereto as Exhibit A.

4.      By letter dated February 9, 2018, OIP acknowledged Plaintiff's FOIA request, assigning it OIP tracking number DOJ-2018-002496 (OAG).   OIP's acknowledgement letter also informed Plaintiff that its request for expedited processing had been granted.   A copy of OIP's acknowledgement letter, dated February 9, 2018 is attached hereto as Exhibit B.

5.      On July 30, 2018, Plaintiff filed suit.   *See* Complaint, ECF No. 1.

6.      By letter dated December 13, 2018, OIP provided an interim response to Plaintiff's FOIA request.   Pursuant to this response, OIP informed Plaintiff that JMD had referred 172 pages of records to OIP for processing and direct response to Plaintiff.   OIP provided Plaintiff with sixty-nine pages containing records responsive to Plaintiff's request, some with excisions made pursuant to Exemptions 5 and 6 of the FOIA, 5 U.S.C. § 552(b)(5) and

(b)(6).   OIP also withheld in full one page pursuant to Exemption 5 of the FOIA.   Additionally, OIP notified Plaintiff that eight pages originated with the United States Census Bureau ("Census"), sixteen pages originated with CRT, and three pages originated with DOJ's Office of Justice Programs (OJP), and that OIP had referred that material to those entities for processing and direct response to Plaintiff.   Lastly, OIP informed Plaintiff that seventy-five pages referred to OIP by JMD were entirely duplicative of other material in the same JMD referral, and those duplicative pages therefore had not been processed.   A copy of OIP's December 13, 2018 interim response letter is attached hereto as Exhibit C.

7.       By letter dated March 29, 2019, OIP provided a final response to Plaintiff's request.   Pursuant to this response, OIP informed Plaintiff that searches had been conducted on behalf of OAG, and that 219 pages containing records responsive to Plaintiff's request were located.   OIP provided to Plaintiff 129 pages of records responsive to Plaintiff's request, some with excisions made pursuant to Exemptions 5 and 6 of the FOIA.   Furthermore, OIP withheld in full ninety pages pursuant to Exemption 5.   A copy of OIP's final response letter is attached hereto as Exhibit D.

### Description of OIP's Standard Search Methods

8.       OIP processes FOIA requests on behalf of itself and the six senior leadership offices within the Department of Justice.   Upon receipt of a FOIA request, OIP makes determinations both as to the appropriate offices in which to conduct an initial records search and as to the records repositories and search methods to use in conducting records searches on behalf of the six senior leadership offices.   OIP bases its assessment of where responsive records are likely maintained on a review of the content of the request itself and the nature of the records sought, as well as OIP's familiarity with the types and location of records that each senior

leadership office maintains, discussions with knowledgeable personnel in the senior leadership offices or elsewhere in the Department, and additional research that OIP staff may conduct on the topic of the request to assist with its assessment.

9.      In order to ensure a reasonably thorough records search, during the course of processing any given FOIA request, OIP continually assesses which staff members' records to search, both with respect to current and former employees, and whether OIP should use any supplemental or alternative search methods (such as targeted inquiries to knowledgeable office staff regarding the existence of records not identified via "keyword" searches) to locate potentially responsive records.   OIP then initiates such additional searches and methods as appropriate.   OIP's assessment is based on our review of records located in response to the initial records searches, discussions with Department or other Executive Branch personnel, and any other pertinent factors considered by OIP.   In sum, OIP records searches are agile and comprehensive, and the various search steps employed by OIP work in tandem to achieve a complete records search.

10.      When searching the records of office custodians identified as having potentially responsive material, OIP staff employ any one of a variety of search methods, or a combination of methods, depending on the nature of the specific request and the type of records systems implicated.   Potentially responsive records may be located in unclassified or classified email systems, computer hard drives (electronic documents) and/or hard copy (paper) files, and OIP takes all reasonable steps to locate responsive material across locations.

### Unclassified Email Systems and Computer Hard Drives

11.      Unclassified email records and computer hard drives are searched using a sophisticated electronic system which remotely searches through a given custodian's entire email

collection and hard drive to isolate and locate potentially responsive records within that collection of electronic records, using search parameters that are provided by OIP staff.   This same system then serves as the review platform by which OIP staff review the records retrieved using those initial search parameters.   This platform allows broad search terms to be used initially and then for OIP staff to run more targeted, secondary searches within the gathered universe to identify records responsive to each request.   If and when secondary searches are conducted, the parameters used are based on a variety of factors, including keywords/search terms and contextual or background information provided in the FOIA request letter, topical research conducted on the request subject, discussions with knowledgeable officials within the Department, and on OIP's review of the initial search results which allows OIP to identify common terms and phrasing that is actually employed by records custodians on the topic of the request.   This two-tiered search approach leverages the technological advancements of the electronic search and review system and, by enabling a broad initial search followed by a focused secondary search, allows OIP staff to conduct thorough, precise, and informed searches of unclassified email systems.

### Departmental Executive Secretariat

12.     The Departmental Executive Secretariat (DES) is the official records repository of OAG, ODAG, OASG, and OLA and maintains records of all formal, controlled, unclassified correspondence sent to or from those offices from January 1, 2001, to the present day. Moreover, the DES is used to track internal Department correspondence sent through formal channels, as well as certain external correspondence including Departmental correspondence with Congress.

13.     Records received by the designated senior leadership offices are entered into DES's Intranet Quorum (IQ) database by trained analysts.   The data elements entered into the system include such items as the date of the document, the date of receipt, the sender, and the recipient, as well as a detailed description of the subject of the record.   In addition, entries are made that, among other things, reflect what action is to be taken on the records, which component has responsibility for that action, and when that action should be completed. Keyword searches of the electronic IQ database may then be conducted by utilizing a single search parameter or combinations of search parameters.   Search parameters may include the subject, organization, date, name, or other keywords.

### OIP's Searches Conducted in Response to Plaintiff's Request

14.     Upon review of Plaintiff's request, OIP searched for potentially responsive records maintained by and on behalf of OAG, the senior leadership office from which Plaintiff's request specifically sought records.[1]   In order to capture all potentially responsive records, OIP conducted broad searches of unclassified email records and computer hard drives within OAG, as well as the DES.

### Search of OAG Email and Hard Drives

15.     OIP initiated its search efforts for OAG on February 14, 2018.   Remote electronic searches of the email and computer files were performed within OAG for a total of ten records custodians.   The OAG custodians included then-current OAG staff and a departed OAG official who had served as Chief of Staff.[2]   Moreover, consistent with the standard procedures as

---

[1]  As discussed *supra*, Plaintiff's request also sought records from JMD and CRT, which responded separately to the request.
[2]  Subsequently, OIP cross-checked the results of its search with records produced in other matters related to the 2020 census to identify any leads to additional custodians in OAG who may have had potentially responsive records but not such leads were identified.

described above, OIP sent search notifications to OAG, providing all potential records custodians with the details of the request and instructions to identify any additional records that would not be captured by OIP's remote search.   No further such records (i.e., records not captured by OIP's remote searches) were ultimately identified by OAG.

16.     The initial search parameters used were the date range of January 20, 2017 to February 14, 2018, and the following keywords or phrases: "Jarmin", "Lamas", "2020 Census", "long form", "citizenship question", "question regarding citizenship", "ACS", "American Community Survey", "citizen voting age population", or "CVAP."   The start date of January 20, 2017 was chosen for OIP's search as it was the date specifically referenced in Plaintiff's request and the end date of February 14, 2018 was chosen as that was the date OIP initiated its search efforts.   *See* 28 C.F.R. § 16.4(a).   The search keywords used by OIP were the exact keywords listed in Plaintiff's request, in addition to the surnames of the two individuals with whom Plaintiff's request specifically sought Department communications.   This initial search gathered a broad set of records from across the entire collection of email and computer files for the relevant custodians.

<u>Search of the Departmental Executive Secretariat</u>

17.     In addition to the email and hard drive searches described above, a member of OIP conducted a search for records responsive to Plaintiff's FOIA request in the electronic database of the DES which, as described above, is the official records repository of all formal correspondence of OAG, ODAG, OASG, and OLA.   OIP's search of the DES was conducted using the search terms "Jarmin," "Lamas," "2020 Census," "long form," "citizenship question," "question regarding citizenship," "ACS," "American Community Survey," "citizen voting age

population," or "CVAP."   The timeframe and keywords for this search were the same as those

used in OIP's email and hard drive search discussed above.

### Results of the Email, Hard Drive, and DES Searches

18.     As a result of the above-described email, hard drive, and DES searches, OIP

located a large number of potentially responsive records.   OIP then reached out to Plaintiff to

discuss the possibility of narrowing the scope of its request to facilitate a faster response.   By

email dated February 26, 2019, Plaintiff agreed to exclude the following categories of documents

from its request:

- Records containing the search terms listed in Campaign Legal Center's request but which do not relate to the census or the American Community Survey;
- News clips and articles, including the forwarding of such articles where no substantive commentary is added; and
- Records where the census or the American Community Survey is mentioned in other contexts not related to the addition of a question regarding citizenship or voting rights act enforcement matters.

Plaintiff's email is attached hereto as Exhibit E. After a manual review of each record retrieved

through OIP's records searches, OIP determined that 219 pages contained records responsive to

Plaintiff's narrowed request.

### **Explanation of Withheld Material**

19.     As stated in the April 5, 2019 Joint Status Report, Plaintiff is challenging only

OIP's assertions of Exemption 5, in addition to the adequacy of its search.   *See* JSR, ECF No. 20

at 4.[3]   Of the 289 pages of responsive records produced or withheld by OIP (seventy pages of

---

[3] Some of pages produced by OIP contain duplicative record markings, and these records were
therefore not further processed in response to Plaintiff's request.   Inasmuch as Plaintiff has
stated that it is only challenging OIP's assertion of Exemption 5, it is my understanding that
Plaintiff is not challenging OIP's handling of duplicative records.

the records referred to OIP by JMD, and 219 pages located in response to OIP's own search),[4] ninety-one pages were withheld in full pursuant to Exemption 5 of the FOIA, and twenty-one pages contained redactions made pursuant to Exemption 5

20.      Attached to this declaration is a *Vaughn* Index containing detailed descriptions of records withheld in full or in part.   This *Vaughn* Index includes the following information for each document withheld in full or in part: Page Count; Exemption 5 privilege(s); and Description of Withheld Material.[5]   In addition, for each document withheld in part, the *Vaughn* Index includes the following additional information: Bates Stamp; Date; Sender; Recipient; and Subject. OIP's *Vaughn* Index is attached hereto as Exhibit F.   For ease of discussion, the documents have been organized into categories.   The designated document categories and applicable FOIA Exemption 5 privileges for each document category are as follows:

### Documents Withheld in Full (91 pages)

- *Draft Correspondence* (33 pages): Deliberative Process Privilege
- *Draft Responses* (48 pages): Deliberative Process and Attorney Work-Product Privileges
- *Presidential Communications Documents* (10 pages): Deliberative Process and Presidential Communications Privileges

### Documents Released in Part (21 pages)

- *Deliberative Discussions Regarding Census and/or ACS* (3 pages): Deliberative Process Privilege
- *Deliberative Discussions Regarding Congressional Correspondence* (1 page): Deliberative Process Privilege
- *Deliberative Discussions Regarding the Drafting Process* (12 pages): Deliberative Process Privilege

---

[4] OIP notes that it referred records to OJP, CRT, and Census, which provided responses directly to Plaintiff.   Additionally, material referred by OIP to Census was subsequently referred to the United States Department of Commerce for direct response to Plaintiff.   From the pages OIP referred to other agencies or DOJ components, only two pages were withheld pursuant to Exemption 5, by CRT.   CRT will provide a separate declaration explaining its withholdings.

[5] Additionally, for draft documents withheld in full, OIP has taken the additional step of indicating where it produced the final drafts to Plaintiff, if available.

- *Deliberative Discussions Regarding Press Inquiries* (3 pages): Deliberative Process Privilege
- *Deliberative Discussions Regarding Inter-Agency Correspondence* (2 pages): Deliberative Process Privilege

**Explanation of Information Withheld Pursuant to Exemption 5**

21.     Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."   5 U.S.C. § 552(b)(5).   As discussed in detail *infra*, all of the information withheld by OIP pursuant to Exemption 5 is protected pursuant to the deliberative process privilege, the attorney work-product privilege and/or the presidential communications privilege.

Exemption 5: Inter-/Intra-Agency Threshold

22.     In order to withhold records pursuant to Exemption 5 of the FOIA, the records must be inter- or intra-agency records.   The responsive information withheld from Plaintiff pursuant to this exemption consists of communications and draft documents generated by and wholly internal to the Executive Branch.   As such, they are inter- or intra-agency documents covered by the threshold of Exemption 5 of the FOIA.

Exemption 5: Deliberative Process Privilege

23.     OIP has protected information within the following eight document categories pursuant to the deliberative process privilege: *Draft Correspondence, Draft Responses, Presidential Communications Documents, Deliberative Discussions Regarding the Drafting Process, Deliberative Discussions Regarding Congressional Correspondence, Deliberative Discussions Regarding Census, Deliberative Discussions Regarding Press Inquiries, and Deliberative Discussions Regarding Inter-Agency Correspondence.*

24.     The deliberative process privilege is intended to protect the decision-making

process of government agencies from public scrutiny in order to enhance the quality of agency

decisions.   To be protected by the deliberative process privilege, the information at issue must

be both "pre-decisional" and "deliberative."   If pre-decisional, deliberative communications

were to be routinely released to the public, DOJ and other Executive Branch employees would be

much more cautious in their discussions with each other, and in candidly providing all pertinent

information and viewpoints in a timely manner to agency decision-makers.   This lack of candor

would seriously impair the Department's ability to engage in forthright, internal discussions

necessary for efficient and proper agency decision-making.

*Draft Correspondence, Draft Responses, and Deliberative Discussions Regarding the Drafting Process*

25.     A significant aspect of the Department's decision-making process consists of the

creation of draft documents which are then internally reviewed, edited, and modified before they

become final.   During the course of their creation, draft documents are routinely transmitted

back and forth between Department employees, continually changing as relevant staff make

track changes, suggest edits, and contemplate strategies as they work toward a final document.

The Department employees preparing such materials must feel free to draft the most thorough

and well-vetted document which is only possible with the knowledge that their preliminary,

nascent views and working drafts will not be disclosed in response to a FOIA request.

26.     Documents in OIP's *Vaughn* Index categorized as *Draft Correspondence*

(withheld in full) consist of draft versions of Department correspondence with Congress or other

federal agencies.   Documents in OIP's *Vaughn* Index categorized as *Draft Responses* (withheld

in full) consist of draft versions of the Department's responses to interrogatories from the United

States Commission on Civil Rights (USCCR).[6]   Documents in OIP's *Vaughn* Index categorized as *Deliberative Discussions Regarding the Drafting Process* (released in part) consist of internal deliberative discussions between Department employees, including comments, suggestions, and feedback regarding the drafting of such correspondence.

27.     These drafts and discussions thereof are deliberative as they reflect Departmental deliberations regarding the content of documents, which had not yet been finalized by relevant decision-makers.   Furthermore, they reflect successive versions of working drafts and, as such, show the internal development of the Department's decisions.   Because these drafts precede the creation and/or transmission of final Department documents, correspondence, reports, or press releases and statements, and precede events for which remarks or statements were being drafted, they are pre-decisional.   Disclosure of the draft public releases would undermine the ability of Department staff to freely engage in the candid "give and take" and forthright internal collaboration which is critical to the eventual development of well-reasoned and accurate communications, particularly with the public and Congress.   DOJ deliberations in these documents cannot be effectively or reasonably segregated from the draft correspondence, and thus the documents have been withheld in full.   Accordingly, the *Draft Correspondence* and *Draft Responses* are protected in full pursuant to the deliberative process privilege and the withheld portions of the *Deliberative Discussions Regarding the Drafting Process* likewise are protected pursuant to the deliberative process privilege.   Where available, the final documents have been provided to Plaintiff – ensuring that the final "decisions" (i.e. the final versions of

---

[6] As discussed *infra*, documents in this category are also fully protected by the attorney work-product privilege of FOIA Exemption 5.

draft documents) have been disclosed, and only the pre-decisional deliberations in the form of drafts and drafting discussions have been withheld.

*Presidential Communications Documents*

28.    Although wholly protected by the presidential communications privilege, the records categorized in the *Vaughn* Index as *Presidential Communications Documents* are also partially or fully protected by the deliberative process privilege.[7]   Specifically, the documents in this category reflect emails between DOJ attorneys and individuals in the White House seeking advice and decision from the White House as to congressional notification of DOJ's request for a citizenship question on the census.   These records are protected by the deliberative process privilege inasmuch as they reflect DOJ and White House officials' internal, deliberative work and advice on matters of presidential concern and decision – in this instance, substantive working discussions during which advice was sought regarding congressional notification of the citizenship question.   These communications occur antecedent to any presidential decision taken on the matters discussed therein and reveal specific concerns, tentative next steps for actions to be taken, questions for consideration, and similar deliberations regarding specific substantive issues surrounding the 2020 census.   Lastly, none of the records withheld encompass or embody final decisions by the ultimate decision-maker in the matter at hand – i.e., the President of the United States and his senior White House staff.

29.    Disclosure of this material protected by the deliberative process privilege would inhibit the Executive Branch's ability to engage in effective communications and decision-making by interfering with the ability of DOJ senior leadership officials to engage in candid

---

[7] As discussed *infra*, documents in this category are also fully protected by the presidential communications privilege of FOIA Exemption 5.

discussions and obtain advice from the White House.   As such, the e-mails and the memoranda

exchanged between senior DOJ senior leadership officials and the President's senior advisors on

this particular topic, their thorough research and recommendations on matters relating to

particular issues regarding the 2020 census, fall within the protections afforded by the

deliberative process privilege – with overlapping protection by the presidential communications

privilege – and are protected in full pursuant to FOIA Exemption 5.   As such, there is no

additional non-exempt information that may be segregated for release to plaintiff.

*Deliberative Discussions Regarding Congressional Correspondence, Deliberative Discussions Regarding Census and/or ACS, Deliberative Discussions Regarding Press Inquiries, and Deliberative Discussions Regarding Inter-Agency Correspondence*

30.     Records in OIP's *Vaughn* Index categorized as the following were released to

Plaintiff, in part:

- *Deliberative Discussions Regarding Census and/or ACS* consist of internal emails among DOJ staff reflecting advice, preliminary research, and opinions, and analysis regarding the census or American Community Survey (ACS).
- *Deliberative Discussions Regarding Congressional Correspondence* consist of internal discussions among DOJ staff regarding an inquiry from Congress.
- *Deliberative Discussions Regarding Press Inquiries* consist of internal emails among DOJ staff containing deliberations about how to respond to press inquiries.
- *Deliberative Discussions Regarding Inter-Agency Correspondence* consist of internal emails among DOJ staff providing advice and recommendations regarding a particular piece of correspondence with another agency.

31.     The e-mails in the above-listed categories are internal discussions among

Department staff.   The protected portions of these e-mails reflect deliberations regarding the

Department's involvement in the census or ACS, correspondence with Congress, or other federal

agencies, press inquiries or coverage.

32.     All of these emails are pre-decisional because they are antecedent to the

finalization of the Department's responses to correspondence with Congress, other agencies, or to

press inquiries, or they reflect evaluative discussion and preliminary assessments as the

Department works toward formulating targeted strategies for final agency action and response.

Department and Executive Branch officials routinely email each other as they engage in such

substantive discussions and develop preliminary assessments about matters on which no final

agency decision has yet been made.    Disclosure of such deliberations would severely hamper

the efficient day-to-day workings of government agencies as individuals would no longer freely

share their ideas and advice on matters under consideration, often while those viewpoints are still

developing, via email.    If deliberative emails such as these were routinely released to the public,

federal agency employees would be much more circumspect in their online discussions with each

other.    This lack of candor would seriously impair the ability to foster the forthright intra- and

inter-agency discussions that are essential for efficient and proper decision-making, especially as

it relates to responding to the media or Congress, the Department's strategic decisions on

interactions with the press, as well as offering preliminary assessments and opinions on matters

of agency business.    Certainly, disclosure of such preliminary assessments and opinions would

make Department officials much more reserved in providing their views in email.    Agency

decision-making is at its best when employees are able to focus on the substance of their views,

and not on whether their views may at some point be made publicly available.    All reasonably

segregable, non-exempt information was released from within these responsive e-mails, and only

the portions protected by the deliberative process privilege were withheld from Plaintiff.

*Segregation of Non-Exempt Information*

33.    OIP thoroughly reviewed each of the records discussed above, and withheld from

disclosure only that information which would reveal the Department's pre-decisional decision-

making process, unless information was also protected under the attorney work-product or

presidential communications privileges.   OIP conducted a line-by-line review of all of the records and released any portions thereof that were not protected by an applicable FOIA exemption, at times redacting only portions of sentences or paragraphs within the e-mails disclosed to plaintiff.   In other instances, such as with draft documents, records were protected in full because the disclosure of any portion of these materials would undermine the core advice and analysis that the deliberative process privilege is meant to protect.   All reasonably segregable, non-exempt information from these records has been disclosed to plaintiff

### Exemption 5:   Attorney Work-Product Privilege

34.    The attorney work-product privilege encompassed by Exemption 5 of the FOIA shields materials prepared by an attorney or at the direction of an attorney, generated in reasonable anticipation of litigation, 5 U.S.C. § 552(b)(5).   This privilege protects any portion of a document prepared in anticipation of litigation, not just the portions concerning opinions on legal matters and legal theories.   The purpose of this privilege is to insulate the adversarial process by protecting Department attorneys' preparation of litigation materials from public scrutiny.

35.    OIP has protected information within the *Draft Responses* document category of the *Vaughn* Index pursuant to the attorney work-product privilege.[8]   These documents consist of information exchanged among or at the direction of DOJ attorneys, generated in reasonable anticipation of litigation.   As discussed *supra*, these draft documents were generated in response to interrogatories from USSCR.

---

[8] As described above, all of these documents are drafts which are separately protected in their entireties by the deliberative process privilege.

36.     Department attorneys are singularly tasked with enforcing federal laws, and defending the legal interests of the United States, a critical responsibility which extends to Department attorneys' responding to interrogatories propounded on the Department.   Disclosure of the draft responses in this category would reveal Department attorneys' mental impressions, conclusions, opinions, or legal theories concerning anticipated or pending litigation, and have been therefore been withheld to avoid disclosure of work product.   Disclosure of this information would hinder the Department's ability to conduct litigation on behalf of the United States and for the Department to ultimately formulate a position on the matters therein.   The documents withheld in this category reflect this routine yet essential attorney work-product produced by Department attorneys who execute this core function of enforcing federal laws.

*Segregation of Non-Exempt Information*

37.     OIP thoroughly reviewed the documents withheld pursuant to the attorney work-product privilege encompassed by FOIA Exemption 5, and determined that no materials could be further segregated for release.   The disclosure of these draft responses and the facts selected for and contained within in these documents would reveal Department attorneys' assessments of what was deemed significant in the context of the interrogatories propounded on the Department by the USCCR, thus undermining the core legal advice and analysis that the privileges are meant to protect.   Accordingly, documents in this category are not appropriate for segregation.

Exemption 5: Presidential Communications Privilege

38.     The records in OIP's *Vaughn* Index categorized as *Presidential Communications Documents* consist of communications with the White House, which are protected in full by the presidential communications privilege encompassed by FOIA Exemption 5, and, as discussed *supra*, in part by the deliberative process privilege.

39.     The presidential communications privilege protects communications or documents that relate to presidential decision-making, which involve the President or his senior advisors.   More specifically, the privilege extends to communications among the President and his seniors advisors, and to documents solicited and received by the President and his immediate White House advisors.   The presidential communications privilege is broader than the deliberative process privilege, in that it applies to the entirety of documents, and includes both decisional and post-decisional records. *See, e.g.*, Judicial Watch, Inc. v. DOJ, 365 F.3d 1108 (D.C. Cir. 2004).

40.     The records protected by OIP pursuant to the presidential communications privilege in the record category *Presidential Communications Documents* consist of communications among DOJ and White House senior advisors on matters related to presidential decision-making regarding the 2020 census.   Specifically, these records consist of emails between DOJ attorneys and individuals in the Executive Office of the President, including the White House Counsel's Office (WHCO) who provide analysis, recommendations, and advice about congressional notification concerning DOJ's request for a citizenship question on the 2020 census.

41.     The records withheld by OIP in the *Presidential Communications Documents* category fall squarely within the presidential communications privilege.   As described above, these records are emails between DOJ attorneys and individuals in the White House seeking advice and decision from the White House as to congressional notification of DOJ's request for a citizenship question on the census.   As communications between senior White House staff and DOJ attorneys on a matter of presidential concern and decision, they are protected in their entireties by the presidential communications privilege.

42.     As discussed *supra*, disclosure of this material protected pursuant to both the presidential communications and deliberative process privileges would inhibit the President's ability to engage in effective communications and decision-making by interfering with the ability of the President to seek and obtain candid information from senior Department leadership officials, who are relied upon and expected to give the President their best possible advice.   As such, the e-mails, between DOJ attorneys and the President's senior advisors on this particular topic, through which senior leadership officials provide their thorough input and seek advice on matters relating to congressional notification concerning DOJ's request for a citizenship question on the 2020 census, fall entirely within the protections afforded by the presidential communications privilege – with overlapping protection by the deliberative process privilege – and are protected in full pursuant to FOIA Exemption 5.

*Segregation of Non-Exempt Information*

43.     OIP reviewed the documents withheld pursuant to the presidential communications privilege encompassed by FOIA Exemption 5, and determined that no materials could be further segregated for release.   As noted *supra*, the presidential communications privilege is broader than the deliberative process privilege, in that it applies to the entirety of documents, and includes both decisional and post-decisional records.   As such, there is no additional non-exempt information that may be segregated for release to plaintiff

I declare under penalty of perjury that the foregoing is true and correct.

Vanessa R. Brinkmann

Executed this 8th day of May 2019.

# EXHIBIT A



February 1, 2018

*Nelson D. Hermila*, Chief
FOIA/PA Branch
Civil Rights Division
Department of Justice
BICN Bldg., Room 3234
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
Email: CRT.FOIArequests@usdoj.gov

*Karen McFadden*, FOIA Contact
Justice Management Division
Department of Justice
Room 1111 RFK
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001
Email: JMDFOIA@usdoj.gov

*Laurie Day,* Chief, Initial Request Staff
Office of Information Policy
Department of Justice
Suite 11050
1425 New York Avenue, N.W.
Washington, DC 20530-0001
Phone: (202) 514-1009

*Via U.S. Mail and Email and Online Form*

**Re:   Urgent Freedom of Information Request**
       **(Expedited Processing & Fee Waiver/Limitation Requested)**

To Whom It May Concern,

Campaign Legal Center ("CLC") submits this Freedom of Information Act ("FOIA") request for all records pertaining to Arthur E. Gary's December 12, 2017 request to the Census Bureau to add a Citizenship question to the 2020 Census Questionnaire. The Census Bureau must make final decisions regarding Census questions and submit them to Congress by **March 31, 2018**. Given the national importance and urgency of this issue, we ask that the Department of Justice ("Department") expedite processing of this request.

## Background

On December 12, 2017, Arthur E. Gary, General Counsel of the Justice Management Division, wrote a letter to Ron Jarmin, Acting Director of the U.S. Census Bureau, urging him to include a citizenship question on the 2020 Census questionnaire. In this letter, Gary stated, "the Department needs a reliable calculation of the citizen voting-age population in localities where voting rights violations are alleged or suspected."[1] He further opined, "the decennial census questionnaire is the most appropriate vehicle for collecting that data, and reinstating a question on citizenship will best enable the Department to protect all American citizens' voting rights under Section 2." From this, he concluded, "the Department believes that decennial census questionnaire data regarding citizenship, if available, would be more appropriate for use in redistricting and Section 2 litigation than the [American Community Survey ("ACS")] citizenship estimates." However, Gary provided no probative evidence that the Department's current voting rights litigation suffers from using the ACS data available nor that adding a citizenship Census question would, on balance, improve the accuracy of available data.[2]

To the contrary, members of the communities DOJ claims to seek to protect, as well as leading voting rights experts and former Census Bureau officials, all agree that adding a citizenship question, particularly at this late stage in preparations, will invoke fear in immigrant communities and exacerbate the already dangerous undercount of those communities.[3] Many households in the United States include a

---

[1] Letter from Arthur E. Gary to Dr. Ron Jarmin, Dec. 12, 2017, https://www.documentcloud.org/documents/4340651-Text-of-Dec-2017-DOJ-letter-to-Census.html.

[2] The Editorial Board, *Census 2020 Doesn't Need Citizenship Question*, USA Today, Jan. 8, 2018, https://www.usatoday.com/story/opinion/2018/01/08/census-2020-no-citizenship-question-editorials-debates/1007921001/ ("The government, moreover doesn't need citizenship data in more detail than it already gets through the ACS. The Supreme Court has ruled that political districts are to be drawn according to their number of residents, no their number of citizens. And federal spending on roads, law enforcement and other services follows similar logic.").

[3] Justin Elliot, *Trump Justice Department Pushes for Citzenhsip Question on Census, Alarming Experts*, ProPublica, Dec. 29, 2017, https://www.propublica.org/article/trump-justice-department-pushes-for-citizenship-question-on-census-alarming-experts ("'People are not going to come out to be counted because they're going to be fearful the information would be used for negative purposes,' said Steve Jost a former top bureau official during the 2010 census.") ("This is a recipe for sabotaging the census," said Arturo Vargas, a member of the National Advisory Committee of the Census and the executive director of NALEO Educational Fund, a Latino advocacy group. "When you start adding last-minute questions that are not tested — how will the public understand the question? How much will it suppress response rates?"); *see also* Priscilla Alvarez, *The Controversial Question DOJ Wants to Add to the U.S. Census*, The Atlantic, Jan. 10, 2018, https://www.theatlantic.com/politics/archive/2018/01/the-controversial-question-doj-wants-to-add-to-the-us-census/550088/ ("'I think the argument ridiculous. The Justice Department never needed or asked for that question on the short form of the census before and the enforcement of the Voting Rights Act does not need it,' said Vanita Gupta, the president and CEO of the Leadership Conference on Civil and Human Rights who ran DOJ's Civil Rights Division . . . .").

mix of citizens, documented immigrants, and undocumented immigrants. This question will lead to a serious undercount of these households. In 2015, CLC submitted an *amicus* brief to the Supreme Court on behalf of four former directors of the Census explaining that the sum effect of adding a citizenship question "would be bad Census data."[4]

CLC does not believe that the American people should be left in the dark concerning an issue that is sure to affect one of the most fundamental rights we have as Americans. It is vital that the public receive up-to-date information as soon as possible about the DOJ's request to include the citizenship question in the 2020 Census. The Census Bureau must make final decisions regarding Census questions and submit them to Congress by March 31, 2018.[5] Last week, the Census Bureau reported that its lawyers are currently reviewing the DOJ's request.[6]

## Request

CLC requests copies of the following documents pursuant to the Freedom of Information Act, 5 U.S.C. §552. We ask that you search for responsive documents from the following components: Justice Management Division, the Attorney General's Office, and the Civil Rights Division.

For the time period from January 20, 2017 to the present, any and all documents— including draft and final memoranda, recommendations, legal opinions, policy advisories or evaluations, educational materials, and all correspondence and communications, including emails,[7] letters, social media posts, and Twitter direct messages—within the following categories:

- Any documents to, from, or mentioning Dr. Ron Jarmin or Dr. Enrique Lamas;

- Any documents containing the following phrases: "2020 census," "long form," "citizenship question," "question regarding citizenship," "ACS," "American Community Survey," "citizen voting age population," or "CVAP."

---

[4] Brief of Former Directors of the U.S. Census Bureau As *Amicus Curiae* In Support of Appellees at 25, *Evenwel v. Abbott,* 136 S. Ct. 1120 (2016), http://www.campaignlegalcenter.org/document/evenwel-v-abbott-supreme-court-amici-brief-clc-behalf-former-directors-us-census-bureau; Hansi Lo Wang, *Adding Citizensip Question Risks 'Bad Count' For 2020 Census, Experts Warn*, NPR, Jan. 10, 2018, https://www.npr.org/2018/01/10/575145554/adding-citizenship-question-risks-bad-count-for-2020-census-experts-warn.

[5] U.S. Census Bureau, *Three Years to Go, Census Bureau Prepares for 2020 Census*, Mar. 31, 2017, https://www.census.gov/newsroom/press-releases/2017/cb17-tps28.html.

[6] Gregory Wallace, *Census citizenship question under legal review*, CNN, Jan. 26, 2018, https://www.cnn.com/2018/01/26/politics/census-bureau-citizenship/index.html

[7] Please note that this request applies to all emails, sent and received, on governmental email addresses, as well as to all emails, sent and received, on all other email addresses and accounts used by Department of Justice personnel to conduct official business.

<u>**Request for Expedited Processing**</u>

Campaign Legal Center requests expedited processing of this records request. 5 U.S.C. § 552(a)(6)(E); 28 C.F.R. 16.5(e)(1)(ii), (iv). CLC certifies that this is a true and correct statement detailing the basis for our request for expedited processing. We have filed this statement with the appropriate FOIA contacts.[8]

CLC requests expedited processing because there is an "urgency to inform the public" about the "actual or alleged federal government activity" covered by the request and CLC is an organization "primarily engaged" in "disseminating information." 28 C.F.R. 16.5(e)(1)(ii); 5 U.S.C. § 552(a)(6)(E)(v)(II). Indeed, a final decision on the matter in question must be made by March 31, 2018. The public deserves access to these records before final decisions are made on this question of national importance. Further, the information requested involves "a matter of widespread and exceptional media interest," and raises "possible questions about the government's integrity that affect public confidence." 28 C.F.R. 16.5(e)(1)(iv).

A. *Request for Expedited Processing Under 5 U.S.C. § 552(a)(6)(E)(v)(II) and 28 C.F.R. 16.5(e)(1)(ii).*

CLC is primarily engaged in disseminating information to the public about actual or alleged government activity because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also, ACLU v. DOJ*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding that such organizations are "representative[s] of the news media" and are "primarily engaged in disseminating information").

CLC maintains a website[9] that provides a wealth of editorial content about democracy law issues, including campaign finance, voting rights, redistricting, and ethics. CLC also publishes a regularly updated blog with original editorial and educational content, [10] and communicates its research analysis through multiple social media platforms such as Facebook, Twitter, and Medium. [11] CLC also disseminates original editorial and educational content to the public through op-eds,[12]

---

[8] *Find A FOIA Contact at DOJ*, The United States Department of Justice, https://www.justice.gov/oip/find-foia-contact-doj/list.
[9] Campaign Legal Center, www.campaignlegalcenter.org.
[10] Blog, Campaign Legal Center, http://www.campaignlegalcenter.org/news/262.
[11] Campaign Legal Center, Facebook, https://www.facebook.com/CampaignLegalCenter/; Campaign Legal Center, Twitter, https://twitter.com/CampaignLegal; Campaign Legal Center, Medium, https://medium.com/clc-blog.
[12] *See e.g.,* Trevor Potter, *Donald Trump Hasn't Solved Any of His Conflicts of Interest,* Wash. Post, Jan. 11, 2017, https://www.washingtonpost.com/posteverything/wp/2017/01/11/donald-trump-hasnt-solved-any-of-his-conflicts-of-interest/?utm_term=.0e80b538fb8f.

press releases,[13] email newsletters, public reports,[14] fact sheets,[15] videos,[16] and other materials. CLC staff is frequently interviewed for news stories.[17] CLC additionally applies editorial skill to analyze and disseminate materials to other news media outlets, which regularly cite and rely upon CLC's work.

CLC is not filing this request to further its commercial interest. CLC is a nonprofit, nonpartisan 501(c)(3) organization. Any information disclosed to CLC by way of this request will be made available to the public at no cost. CLC will also use documents responsive to the request to create analytical content—from op-eds to reports to blogs—that will further educate the public about these matters.

An urgent need for expedited processing exists where the records requested touch on an issue that is "the subject of current news coverage." *Al-Fayed v. CIA*, 254 F.3d 300, 308 (D.C. Cir. 2001). The DOJ's controversial letter to the Census Bureau is a continuous source of significant news coverage and public interest since it has become public. It has garnered a great deal of public attention.[18] As discussed above,

---

[13] Press Releases, Campaign Legal Center, http://www.campaignlegalcenter.org/news/286.

[14] *See e.g.*, Make Democracy Count: Ending Partisan Gerrymandering, Campaign Legal Center (Aug. 10, 2016), http://www.campaignlegalcenter.org/document/make-democracy-count-ending-partisan-gerrymandering; Ruth Greenwood, Analysis: Partisan Gerrymandering in the 2016 Election, Campaign Legal Center (Jan. 9, 2017), http://www.campaignlegalcenter.org/news/blog/analysis-partisan-gerrymandering-2016-election; Funding the Presidential Nominating Conventions: How a Trickle of Private Money Turned Into a Flood, Campaign Legal Center (June 14, 2016), http://www.campaignlegalcenter.org/document/funding-presidential-nominating-conventions-how-trickle-private-money-turned-flood.

[15] *See e.g.*, Backgrounder: Record of Supreme Court Nominee Neil Gorsuch on Democracy Law, Campaign Legal Center (Feb. 2, 2017), http://www.campaignlegalcenter.org/news/update/backgrounder-record-supreme-court-nominee-neil-gorsuch-democracy-law.

[16] *See e.g.*, *Meet the Victims of Texas' Voter Photo ID Law,* Campaign Legal Center, Apr. 28, 2015, http://www.campaignlegalcenter.org/news/press-releases/meet-victims-texas-voter-photo-id-law.

[17] Media Coverage, Campaign Legal Center, http://www.campaignlegalcenter.org/news/241.

[18] *See, e.g.*, Hansi Lo Wang, *Adding Citizenship Question Risks 'Bad Count' For 2020 Census, Experts Warn*, NPR, Jan. 10, 2018, https://www.npr.org/2018/01/10/575145554/adding-citizenship-question-risks-bad-count-for-2020-census-experts-warn; Justin Elliot, *Trump Justice Department Pushes for Citizenship Question on Census, Alarming Experts*, ProPublica Dec. 29, 2017, https://www.propublica.org/article/trump-justice-department-pushes-for-citizenship-question-on-census-alarming-experts; Priscilla Alvarez, *The Controversial Question DOJ Wants to Add to the U.S. Census*, The Atlantic, Jan. 10, 2018, https://www.theatlantic.com/politics/archive/2018/01/the-controversial-question-doj-wants-to-add-to-the-us-census/550088/; The Editorial Board, *Census 2020 Doesn't Need Citizenship Question*, USA Today, Jan. 8, 2018, https://www.usatoday.com/story/opinion/2018/01/08/census-2020-no-citizenship-question-editorials-debates/1007921001/ ("Why does the administration want to ask the citizenship of every person in every home in America? The only plausible explanation is that it wants to depress participation among immigrant groups. That's not a very good answer."); Raul A. Reyes, *The Question That Could Sabotage The Census*, CNN, Jan. 2, 2018 ("[D]oes anyone seriously believe that Attorney General  Jeff Sessions, head of the Department of Justice, is concerned about minority voting rights?"); Catherine Rampell, *The GOP Is Sabotaging This Sacred Mandate*, The Wash. Post, Jan. 4. 2018, https://www.washingtonpost.com/opinions/tthe-gop-is-sabotaging-one-of-governments-most-

a final decision on 2020 Census questions must be made by March 31, 2018, when the Census must submit the questions to Congress. The public deserves access to the records discussing the DOJ's last-minute request before the matter is closed for debate.

B. *Request for Expedited Processing Under 5 U.S.C. § 552(a)(6)(E) and 28 C.F.R. § 16.5(e)(1)(iv)*

CLC requests expedited processing because the requested records involve "a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv). For the reasons discussed above, it is clear that whether the Census Bureau will include a citizenship question on the 2020 census is a question of enormous media and public interest that affects public confidence in the government. Indeed, it goes to the heart of the public's confidence in our democratic system of government.

**Application for Waiver or Limitation of Fees**

CLC requests a waiver of document search, review, and duplication fees on the grounds that disclosure of the requested records is in the public interest and because disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). The requested records will provide the public with critical information.

As noted above, CLC is not filing this request to further its commercial interest. A fee waiver would further Congress' intent in providing for waivers for noncommercial requesters. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be liberally construed in favor of waivers for noncommercial requesters.").

CLC also requests a fee waiver because CLC qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). As noted above, CLC meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III).

The D.C. Circuit has held that a requester may qualify as a news media entity if it "'distribute[s] [its] work' by issuing press releases to media outlets in order to

---

sacred-mandates/2018/01/04/da27ad60-f197-11e7-b3bf-ab90a706e175_story.html?utm_term=.65f29aab81a0 ("Apparently not content to shortchange funding, the administration is also taking steps that will actively decrease participation [in the census]"); Anjana Ahuja, *When Census Takin Is A Recipe For Controversy,* Financial Times, Jan. 8, 2018, https://www.ft.com/content/9cddb7d0-f456-11e7-a4c9-bbdefa4f210b.

reach the public indirectly." *Cause of Action v. FTC*, 799 F.3d. 1108, 1125-26 (D.C. Cir. 2015). Courts have found that other organizations with functionally similar missions engaged in similar public education activities qualify as "representative[s] of the news media," even if engaged in litigation or other advocacy beyond educating the public about the operations of government. *See, e.g., id.* at 1121-25 (finding a public interest advocacy organization that comments to other media outlets about documents it obtains under FOIA a news media requester); *Elec. Privacy Info. Ctr. v. DOD*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding nonprofit public interest group that published a biweekly email newsletter a news media requester); *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding "public interest law firm" Judicial Watch a news media requester).

   "It is critical that the phrase 'representative of the news media' be interpreted broadly if the act is to work as expected, . . . In fact, *any person or organization which regularly publishes or disseminates information to the public . . . should qualify for waivers as a 'representative of the news media.'*" 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986), cited in *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1386 (D.C. Cir. 1989). Given the foregoing, there can be no doubt that CLC performs important functions as a "representative of the news media," as defined by the relevant statute and regulations.

   In the event the fee waiver is not granted, CLC may not be charged for the first two hours of search time, or for the first hundred pages of duplication. Please contact me and advise me of the cost of this request if processing costs exceed $100. You can contact me at 202-856-7911 or at dlang@campaignlegalcenter.org.

## **Withholding of Documents**

   If the Department determines that any of the requested documents are exempt from disclosure, please provide a *Vaughn* index describing any such document(s) or parts of document(s) withheld; and the justification for withholding any document(s) or any part of any document(s), including the specific exemption claimed and the consequences of providing the withheld information. *See Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973); *Mead Data Central, Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977) ("we require that when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply"); *King v. Dep't of Justice*, 830 F.2d 210, 223-24 (D.C. Cir. 1987) ("A withholding agency must describe *each* document or portion thereof withheld, and for *each* withholding it must discuss the consequences of disclosing the sought-after information"). For any document or record for which an exemption is claimed, please disclose any reasonably segregable non-exempt portion of the requested document or record. 5 U.S.C. § 552(b).

## **Conclusion**

Pursuant to Department regulations, CLC expects notification of a decision on its request for expedited processing within ten days, 28 C.F.R. 16.5(e)(4). Even if expedited processing should be rejected, CLC expects a response to this Request within twenty working days, as required by statute. 5 U.S.C. § 552(a)(6)(A).

Thank you for your prompt attention to this matter. Where possible, please send the requested records electronically to dlang@campaignlegalcenter.org. Please furnish all applicable paper records to: Danielle Lang, Campaign Legal Center, 1411 K Street NW, Suite 1400, Washington, DC 20005. If you have any questions, please contact me by email or by telephone at 202-856-7911.

Sincerely,

s/ Danielle M. Lang

Danielle Lang
Senior Counsel*—Voting Rights & Redistricting
Campaign Legal Center
1411 K Street N.W., Suite 1400
Washington, DC 20005

*Admitted in New York and California only; practice limited to U.S. courts and federal agencies

# EXHIBIT B



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC  20530-0001*

*Telephone: (202) 514-3642*

February 9, 2018

Ms. Danielle Lang
Campaign Legal Center
1411 K Street, NW
Suite # 1400
Washington, DC  20005                      Re:   DOJ-2018-002496 (AG)
dlang@campaignlegalcenter.org                   VRB:VAV:JMS

Dear Ms. Lang:

      This is to acknowledge receipt of your Freedom of Information Act (FOIA) request
dated and received in this Office on February 1, 2018, in which you requested (1) documents
to, from, or mentioning Dr. Ron Jarmin or Dr. Enrique Lamas; and (2) documents containing
the phrases "2020 census," "long form," "citizenship question," "question regarding
citizenship," "ACS," "American Community Survey," "citizen voting age population," or
"CVAP," dating since January 20, 2017.  This response is made on behalf of the Office of the
Attorney General.

      You have requested expedited processing of your request.  I have determined that your
request for expedited processing should be granted.  Accordingly, your request has been
assigned to an analyst in this Office and our processing of it has been initiated.

      Although your request has been granted expedited processing, we are required to advise
you that the records you seek require a search in and/or consultation with another Office, and
so your request falls within "unusual circumstances."  See 5 U.S.C. 552 § (a)(6)(B)(i)-
(iii).  Accordingly, we have not yet completed a search to determine whether there are records
within the scope of your request.  The time needed to process your request will necessarily
depend on the complexity of our records search and on the volume and complexity of any
records located.  Your request has been assigned to the expedited track and will be processed
as soon as practicable.

      We have not yet made a decision on your request for a fee waiver.  We will do so after
we determine whether fees will be assessed for this request.  In your request, you agreed to pay
fees up to $100 in the event that a fee waiver is not granted.

      If you have any questions or wish to discuss reformulation or an alternative time frame
for the processing of your request, you may contact the analyst handling your request, James
Smith, by telephone at the above number or you may write to him at the above address.  You
may also contact our FOIA Public Liaison, Douglas Hibbard, for any further assistance and to
discuss any aspect of your request at: Office of Information Policy, United States Department

of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001;
telephone 202-514-3642; or facsimile 202-514-1009.

Lastly, you may contact the Office of Government Information Services (OGIS) at the
National Archives and Records Administration to inquire about the FOIA mediation services
they offer.  The contact information for OGIS is as follows:  Office of Government
Information Services, National Archives and Records Administration, Room 2510, 8601
Adelphi Road, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at
202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

# EXHIBIT C



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

December 13, 2018

Ms. Danielle Lang
Campaign Legal Center
1411 K Street, NW
Suite # 1400
Washington, DC 20005                    Re:      18-01771 (D.D.C.)
dlang@campaignlegalcenter.org                    VRB:TAZ:SJD

Dear Ms. Lang:

While processing your Freedom of Information Act (FOIA) request dated February 1, 2018, in which you requested (1) documents to, from, or mentioning Dr. Ron Jarmin or Dr. Enrique Lamas; and (2) documents containing the phrases "2020 census," "long form," "citizenship question," "question regarding citizenship," "ACS," "American Community Survey," "citizen voting age population," or "CVAP," dating since January 20, 2017, the Justice Management Division (JMD) referred 172 pages of records to this Office for processing. The JMD tracking number for this request is 110900.

I have determined that sixty-nine pages containing records responsive to your request are appropriate for release, with excisions made pursuant to Exemptions 5 and 6 of the FOIA, 5 U.S.C. § 552(b)(5) and (b)(6), and copies are enclosed. Exemption 5 pertains to certain inter- and intra-agency communications protected by the deliberative process privilege. Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties. Additionally, I have determined that one page should be withheld in full pursuant to Exemption 5 of the FOIA 5 U.S.C. § 552(b)(5). Please be advised that duplicative records have not been processed, and are marked accordingly. Moreover, seventy-five pages consisting entirely of duplicative records have not been processed.

Also, please note that pages containing redactions, with no corresponding FOIA exemption marking (pages 21 and 22 of the attached PDF), were present on the documents as located, and were not made as part of our FOIA review.

Lastly, because eight pages originated with the Census Bureau; sixteen pages originated with the Civil Rights Division (CRT); and three pages originated with the Office of Justice Programs (OJP), we have referred that material to those entities for processing and direct response to you.

For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. *See* 5 U.S.C. § 552(c) (2012

-2-

& Supp. V 2017).  This response is limited to those records that are subject to the requirements of the FOIA.  This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

If you have questions regarding this response, please contact Josh Kolsky of the U.S. Attorney's Office for the District of Columbia, at 202-252-2541.

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

Enclosures

# EXHIBIT D



**U.S. Department of Justice**

Office of Information Policy

*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

March 29, 2019

Danielle Lang
Campaign Legal Center
1411 K Street, NW
Suite 1400                                    Re:    DOJ-2018-002496 (AG)
Washington, DC 20005                                 D.D.C. No. 18-01771
dlang@campaignlegalcenter.org                        VRB:JMB:SJD

Dear Danielle Lang:

   This responds to your Freedom of Information Act (FOIA) request dated February 1, 2018, in which you requested certain records, dating since January 20, 2017, pertaining to the inclusion of a citizenship question on the 2020 Census. This request was subsequently narrowed in an email to Department of Justice counsel dated February 26, 2019. This response is made on behalf of the Office of the Attorney General (OAG).

   Please be advised that a search has been conducted on behalf of OAG, as well as of the electronic database of the Departmental Executive Secretariat, which is the official records repository for OAG. As a result of these searches, 219 pages were located that contain records responsive to your request. I have determined that 129 pages containing records responsive to your request are appropriate for release, with excisions made pursuant to Exemptions 5 and 6 of the FOIA, 5 U.S.C. § 552(b)(5) and (b)(6), and copies are enclosed. Additionally, I have determined that ninety pages should be withheld in full pursuant to Exemption 5 of the FOIA. Exemption 5 pertains to certain inter- and intra-agency communications protected by civil discovery privileges. Exemption 6 pertains to information the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties.

   Please be advised that duplicative records have not been processed for release, and are marked accordingly in the enclosed pages. Moreover, the highlighted text within the emails appearing on pages 101 and 103 of the enclosed production were present on the documents as located during our records search, and were not added pursuant to our FOIA review.

   For your information, Congress excluded three discrete categories of law enforcement and national security records from the requirements of the FOIA. *See* 5 U.S.C. § 552(c) (2012 & Supp. V 2017). This response is limited to those records that are subject to the requirements of the FOIA. This is a standard notification that is given to all our requesters and should not be taken as an indication that excluded records do, or do not, exist.

-2-

If you have questions regarding this response, please contact Paul Cirino of the U.S. Attorney's Office for the District of Columbia, at 202-252-2529.

Sincerely,

Vanessa R. Brinkmann
Senior Counsel

Enclosures

# EXHIBIT E

**From:** Cirino, Paul (USADC)
**To:** Dykstra, Sam (OIP)
**Subject:** FW: Campaign Legal Center v. DOJ, No. 18-1771 (TSC) (D.D.C.)
**Date:** Tuesday, May 7, 2019 5:12:15 PM

---

**From:** Cirino, Paul (USADC)
**Sent:** Tuesday, February 26, 2019 1:06 PM
**To:** 'Ariel, Nadav' <nariel@buckleyfirm.com>; Flood, Josh <jflood@buckleyfirm.com>
**Cc:** Miller, Adam <amiller@buckleyfirm.com>; dlang@campaignlegalcenter.org
**Subject:** RE: Campaign Legal Center v. DOJ, No. 18-1771 (TSC) (D.D.C.)

Nadav,

This is fine with us.  To summarize:

Campaign Legal Center agrees that the following categories of records are not responsive to their request and OIP will not process them:

- Records containing the search terms listed in Campaign Legal Center's request but which do not relate to the census or the American Community Survey
- News clips and articles, including the forwarding of such articles where no substantive commentary is added
- Records where the census or the American Community Survey is mentioned in other contexts not related to the addition of a question regarding citizenship or voting rights act enforcement matters.

Thank you very much for your cooperation.

Paul

---

**From:** Ariel, Nadav <nariel@buckleyfirm.com>
**Sent:** Saturday, February 23, 2019 4:52 PM
**To:** Cirino, Paul (USADC) <PCirino@usa.doj.gov>; Flood, Josh <jflood@buckleyfirm.com>
**Cc:** Miller, Adam <amiller@buckleyfirm.com>; dlang@campaignlegalcenter.org
**Subject:** RE: Campaign Legal Center v. DOJ, No. 18-1771 (TSC) (D.D.C.)

Hi Paul,

We're mostly fine with the requests below. On the third request, we would only agree if the exclusion is limited to instances where the census or the American Community Survey is mentioned in other contexts not related to the addition of a question regarding citizenship **or voting rights act enforcement matters.**

Thanks,
Nadav

---

**From:** Cirino, Paul (USADC) <Paul.Cirino@usdoj.gov>
**Sent:** Friday, February 22, 2019 3:43 PM
**To:** Flood, Josh <jflood@buckleyfirm.com>; Ariel, Nadav <nariel@buckleyfirm.com>
**Cc:** Miller, Adam <amiller@buckleyfirm.com>; dlang@campaignlegalcenter.org
**Subject:** Campaign Legal Center v. DOJ, No. 18-1771 (TSC) (D.D.C.)

**[EXTERNAL Email]**
Nadav et al.,

Upon receipt of the Court's recent Order, OIP has been working diligently to complete its obligations by the required deadlines.  OIP has identified certain issues that will help it process potentially responsive documents more efficiently – those issues are set forth below.  Please let us know your position on these questions at your earliest convenience.  If you believe it would be productive to arrange a conference call to work through these issues, please let me know.  Thanks in advance for your cooperation.

- OIP assumes that CLC is not interested in records that contain the search terms listed in its request but which do not relate to the census or American Community Survey. Please confirm that this understanding is correct.
    - For example, OIP has encountered instances where "ACS" refers to "armored car service" or the name of a business entity. Additionally, "long form" has appeared in the context of "long form settlement agreement." This is just a sampling and as OIP continues to process the records other similar occurrences may show up.
- Would CLC be willing to exclude from its request news clips or articles and the forwarding of such articles where no substantive commentary is added?
    - For example, a news article being forwarded to other recipients but without any additional text.
- Would CLC be willing to exclude from its request instances where the census or the American Community Survey is mentioned in other contexts not related to the addition of a question regarding citizenship?
    - OIP has encountered instances where census and/or American Community Survey data is mentioned as part of other reports or court filings that do not relate to the citizenship question.
    - For example, the Bureau of Justice Statistics report entitled "Crime Against Persons with Disabilities 2009-2015" uses data from the American Community Survey: https://www.bjs.gov/content/pub/pdf/capd0915st_sum.pdf

Paul

Paul Cirino
Assistant United States Attorney
Civil Division

United States Attorney's Office for the District of Columbia

555 Fourth Street, N.W.

Washington, D.C.  20530

Phone:  (202) 252-2529

Fax:  (202) 252-2599

paul.cirino@usdoj.gov

This email message (including any attachments) is only for use by the intended recipient(s) and is presumed confidential.  It also may be subject to the attorney-client privilege or other confidentiality protections and may constitute inside information.  If you are not an intended recipient, you may not review, copy, distribute, or otherwise use this message or its contents.  If you received this message in error, please notify the sender and delete this message (including any attachments) from your system immediately.  Any unauthorized reading, copying, distribution, or other use of this message or its contents is strictly prohibited and may be unlawful.

# EXHIBIT F

<u>Campaign Legal Center v. U.S. Dep't of Justice,</u>
Civil Action No. 18-cv-01771
U.S. District Court for the District of Columbia


Office of Information Policy (OIP) *Vaughn* Index


This index contains a description of the 112 pages of records withheld in full or released in part by OIP, pursuant to Freedom of Information Act (FOIA) Exemption 5.  For clarity of presentation, the records in this *Vaughn* Index are keyed to document categories which are discussed in detail in the accompanying OIP declaration.  To provide further context for its withholdings, OIP has taken the additional step of indicating where it produced the final drafts of draft documents it withheld in full, if available.  The descriptions of each record within this *Vaughn* Index are meant to be read in tandem with the OIP declaration, which provides a more fulsome explanation of the basis for withholding the information at issue.  The document categories are as follows:


**<u>Documents Withheld in Full:</u>**
- *Draft Correspondence*
- *Draft Responses*
- *Presidential Communications Documents*


**<u>Documents Released in Part</u>:**
- *Deliberative Discussions Regarding Census and/or ACS*
- *Deliberative Discussions Regarding Congressional Correspondence*
- *Deliberative Discussions Regarding the Drafting Process*
- *Deliberative Discussions Regarding Press Inquiries*
- *Deliberative Discussions Regarding Inter-Agency Correspondence*


This *Vaughn* Index will use acronyms when referring to the following components and offices of the Department of Justice (DOJ):  the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Public Affairs (PAO), and Justice Management Division (JMD).

**A. DOJ OIP, Records Withheld in Full, Pursuant to Exemption 5**

| Description of Withheld Document | Withholding Category | Exemption 5 Privilege | Pages | Final Version (of Drafts) Provided to Plaintiff |
|---|---|---|---|---|
| **JMD Referral – December 13, 2018 OIP Interim Response** | | | | |
| Draft Correspondence between JMD and Department of Commerce | *Draft Correspondence* | Deliberative Process Privilege | 1(full) | JMD-0005; in part, remainder not included in referral |
| **March 29, 2019 OIP Final Response** | | | | |
| Draft Correspondence with Representative Gonzalez | *Draft Correspondence* | Deliberative Process Privilege | 1 (full) | OIP-0002 to OIP-0003 |
| Draft Correspondence with Representative Gonzalez | *Draft Correspondence* | Deliberative Process Privilege | 1 (full) | OIP-0002 |
| Draft Correspondence with Representative Gonzalez | *Draft Correspondence* | Deliberative Process Privilege | 1 (full) | OIP-0002 |
| Draft Correspondence with Census Bureau | *Draft Correspondence* | Deliberative Process Privilege | 3 (full) | OIP-0107 to OIP-0109 |
| Draft Correspondence with Census Bureau | *Draft Correspondence* | Deliberative Process Privilege | 3 (full) | OIP-0107 to OIP-0109 |
| Draft Correspondence with Census Bureau | *Draft Correspondence* | Deliberative Process Privilege | 3 (full) | OIP-0107 to OIP-0109 |
| Draft USCCR Interrogatory Responses | *Draft Responses* | Deliberative Process & Attorney Work-Product Privileges | 24 (full) | No final located |
| Draft Correspondence with Census Bureau | *Draft Correspondence* | Deliberative Process Privilege | 4(full) | OIP-0107 to OIP-0109 |
| Draft Correspondence with Census Bureau | *Draft Correspondence* | Deliberative Process Privilege | 4(full) | OIP-0107 to OIP-0109 |
| Draft Correspondence with Census Bureau | *Draft Correspondence* | Deliberative Process Privilege | 4(full) | OIP-0107 to OIP-0109 |
| Draft Correspondence with Census Bureau | *Draft Correspondence* | Deliberative Process Privilege | 4(full) | OIP-0107 to OIP-0109 |
| Draft USCCR Interrogatory Responses | *Draft Responses* | Deliberative Process & Attorney Work-Product Privileges | 24 (full) | No final located |
| Draft Correspondence with Census Bureau | *Draft Correspondence* | Deliberative Process Privilege | 4(full) | OIP-0107 to OIP-0109 |

| Email Correspondence with the White House | *Presidential Communications Documents* | Deliberative Process & Presidential Communications Privileges | 10 (full) | N/A |
|---|---|---|---|---|

**B.  DOJ OIP, Records Released in Part, Pursuant to Exemption 5**

| Bates Numbers | Date[1] | Record Sender/Recipient/Subject | Description of Withheld Material | Exemption 5 Privilege | Pages |
|---|---|---|---|---|---|
| | | **JMD Referral – December 13, 2018 OIP Interim Response** | | | |
| JMD-0002 to JMD-0003 | 03/06/17 | **From:** Arthur Gary<br>**To:** James McHenry<br>**Subject:** RE: Census | *Deliberative Discussions Regarding the Census and/or ACS* | Deliberative Process Privilege | 2 (in part) |
| IJMD-0007 | 03/7/2017 | **From:** Arthur Gary<br>**To:** Michael Allen<br>**Subject:** Fwd: Census | *Deliberative Discussions Regarding Census and/or ACS* | Deliberative Process Privilege | 1 (in part) |
| JMD-0023 | 05/25/17 | **From:** Faith Burton<br>**To:**  Arthur Gary, James McHenry, Tom Wheeler<br>**Subject:** RE: Census Letter | *Deliberative Discussions Regarding Congressional Correspondence* | Deliberative Process Privilege | 1 (in part) |
| JMD-0039 | 02/13/18 | **From:** Arthur Gary<br>**To:**  Sarah Isgur Flores, Ian Prior<br>**Subject:** RE: Letter in Response to Census Bureau Letter Re: Citizenship on 2020 Census | *Deliberative Discussions Regarding the Drafting Process* | Deliberative Process Privilege | 1 (in part) |
| JMD-0063 | 02/13/18 | **From:**  Arthur Gary<br>**To:**  Devin O'Malley; Sarah Isgur Flores<br>**Subject:** RE: NYT reporter // comment on 2020 census citizenship question | *Deliberative Discussions Regarding Press Inquiries* | Deliberative Process Privilege | 1 (in part) |
| JMD-0067 to JMD-0068 | 01/23/18 | **From:** Arthur Gary<br>**To:**  Devin O'Malley; Lee Lofthus; Wyn Hornbuckle<br>**Subject:** Re: Question from Chicago Tribune | *Deliberative Discussions Regarding Press Inquiries* | Deliberative Process Privilege | 2 (in part) |

---

[1] Note: the date stamp and sender/recipient/subject at the top of each selected email chain are provided for the emails.

| | | | | | |
|---|---|---|---|---|---|
| *March 29, 2019 OIP Final Response* | | | | | |
| OIP-0101 to OIP-0102 | 01/02/18 | **From:** Rachel Parker<br>**To:** Devin O'Malley<br>**Subject:** Re: APPROVAL: Statement in Response to Citizenship Question on Census | *Deliberative Discussions Regarding the Drafting Process* | Deliberative Process Privilege | 2 (in part) |
| OIP-0103 | 01/02/18 | **From:** Robert Hur<br>**To:** Devin O'Malley<br>**Subject:** Re: APPROVAL: Statement in Response to Citizenship Question on Census | *Deliberative Discussions Regarding the Drafting Process* | Deliberative Process Privilege | 1 (in part) |
| OIP-0105 | 12/19/17 | **From:** Sarah Isgur Flores<br>**To:** Ian Prior; Devin O'Malley<br>**Subject:** Fwd: Dr. Ron Jarmin – US Census Bureau.pdf | *Deliberative Discussions Regarding Inter-Agency Correspondence* | Deliberative Process Privilege | 1 (in part) |
| OIP-0113 | 12/12/17 | **From:** Rachael Tucker<br>**To:** Danielle Cutrona<br>**Subject:** FW: U.S. Census Bureau Dr. Jarmin (Revised Dec. 12th).pdf | *Deliberative Discussions Regarding Inter-Agency Correspondence* | Deliberative Process Privilege | 1 (in part) |
| OIP-0116 to OIP-0117 | 12/12/17 | **From:** Gene Hamilton<br>**To:** Rachael Tucker<br>**Subject:** RE: Letter | *Deliberative Discussions Regarding the Drafting Process* | Deliberative Process Privilege | 2 (in part) |
| OIP-0118 | 12/8/17 | **From:** Rachael Tucker<br>**To:** John Gore<br>**Subject:** RE: Letter | *Deliberative Discussions Regarding the Drafting Process* | Deliberative Process Privilege | 1 (in part) |
| OIP-0119 | 12/8/17 | **From:** Rachael Tucker<br>**To:** Brian Morrissey<br>**Subject:** RE: Letter | *Deliberative Discussions Regarding the Drafting Process* | Deliberative Process Privilege | 1 (in part) |
| OIP-0122 | 12/8/17 | **From:** John Gore<br>**To:** Rachael Tucker<br>**Subject:** Re: | *Deliberative Discussions Regarding the Drafting Process* | Deliberative Process Privilege | 1 (in part) |
| OIP-0123 to OIP-0124 | 11/30/17 | **From:** John Gore<br>**To:** Robert Troester; Rachael Tucker<br>**Subject:** RE: Census Letter | *Deliberative Discussions Regarding the Drafting Process* | Deliberative Process Privilege | 2 (in part) |
| OIP-0127 | 11/29/17 | **From:** Gene Hamilton<br>**To:** Rachael Tucker<br>**Subject:** RE: Census Letter | *Deliberative Discussions Regarding the Drafting Process* | Deliberative Process Privilege | 1 (in part) |