**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAMPAIGN LEGAL CENTER,　　　　　） | |
| ） | |
| Plaintiff,　　　） | |
| ） | |
| v.　　　　　） | Civil Action No. 18-cv-1771 (TSC) |
| ） | |
| ） | |
| U.S. Department of Justice,　　　） | |
| ） | |
| ） | |
| Defendant.　　　） | |
| ） | |

**MEMORANDUM OPINION**

Plaintiff Campaign Legal Center (CLC) has sued the U.S. Department of Justice (DOJ),

seeking to compel responses to its February 2, 2018 Freedom of Information Act (FOIA) request.

DOJ has moved for summary judgment (ECF No. 22, Def. MSJ), and CLC has cross-moved for

summary judgment (ECF No. 24, Pl. MSJ).  For the reasons set forth below, the court will grant in

part and deny in part DOJ's Motion for Summary Judgment and grant in part and deny in part

CLC's Cross-Motion for Summary Judgment.[1]

## I.    BACKGROUND

Wilbur Ross became Secretary of the Department of Commerce on February 28, 2017.

Roughly two months later, he emailed a subordinate, Earl Comstock, stating: "I am mystified why

nothing have [sic] been done in response to my months old request that we include the citizenship

question. Why not?"  (ECF No. 24-5, 5/2/17 Email at 2.)  Ross was referring to his request to add a

---

[1] Due to overlapping facts and claims between this case and another case before this court,
*Campaign Legal Center v. DOJ*, No. 18-cv-1187, portions of this opinion are identical to language
in the summary judgment opinion in that case.

question about citizenship status to the 2020 Census Questionnaire.  Comstock replied the same

day: "I agree Mr. Secretary . . . We need to work with Justice to get them to request that citizenship

be added back as a census question, and we have the court cases to illustrate that DoJ has a

legitimate need for the question to be included.  I will arrange a meeting with DoJ staff this week to

discuss."  (5/2/17 Email at 2.)

Secretary Ross followed up that August: "where is the DoJ in their analysis? If they still

have not come to a conclusion please let me know your contact person and I will call the AG."

(ECF No. 24-6, Pl. Exh. 5 at 2.)  A month later, on Friday September 8, 2017, Comstock sent

Secretary Ross a memo stating:

> I spoke several times with James McHenry [DOJ] by phone, and after considering
> the matter further James said that Justice staff did not want to raise the
> question . . . James directed me to Gene Hamilton at the Department of Homeland
> Security.  Gene and I had several phone calls to discuss the matter, and then Gene
> relayed that after discussion DHS really felt [] it was best handled by the
> Department of Justice.  At that point the conversation ceased and I asked James
> Uthmeier [OGC at Commerce] to look into the legal issues and how Commerce
> could add the question to the Census itself.

(ECF No. 24-7, Pl. Exh. 6 at 2).  The record indicates that Secretary Ross contacted then-

Attorney General Jeff Sessions that same Friday, because the following Monday, Arthur Gary, the

General Counsel for DOJ's Justice Management Division, emailed John Gore, a Deputy Assistant

Attorney General: "[Assistant Attorney General for Administration] Lee Lofthus has asked me to

reach out to you to find out if you and/or [the Civil Rights Division] have any background

information regarding some concerns raised that the Secretary of Commerce raised last week with

the AG relating to the 2020 Census.  I understand the concerns relate to potential questions relating

to citizenship . . ."  (ECF No. 27-2, Pl. Exh. A at 3.)

The record further suggests that Attorney General Sessions quickly agreed to request the

citizenship question.  Later that week, Gore connected via email a DOJ employee and a Department

of Commerce employee to coordinate a call between Sessions and Ross.  (ECF No. 24-8, Pl. Exh. 7

at 2.)  In the correspondence preceding the call, the DOJ employee wrote: "[f]rom what John [Gore]

told me, it sounds like we can do whatever you all need us to do and the delay was due to a

miscommunication. The AG is eager to assist."  (*Id.*)  A call between Sessions and Ross occurred

that day—September 17, 2017.  (*Id.*)  With the Attorney General on board, the drafting process

commenced, including the following steps:

- *November 1, 2017*:  Gore emailed Chris Herren (Voting Section Chief) asking for comments and edits on a draft letter.  (ECF No. 22-6, Def. Exh. E at 76.)
- *November 3, 2:05 p.m.*: Herren responded: "some comments from me are included in the attached."  (*Id.*)
- *November 3, 5:10 p.m.*: Gore emailed Gary: "the draft letter that we discussed earlier this week is attached. Let's touch base early next week once you've had a chance to review it."  (ECF No. 22-6, Def. Exh. G at 93.)
- *November 3, 5:35 p.m.*: Bethany Pickett (Civil Rights Division) emailed Gore: "I've attached the letter that we discussed yesterday.  I would be happy to discuss this further. Please let me know if you have any questions regarding my comments and edits."  (Def. Exh. E at 75.)
- *November 22*: Gary replied to Gore with a revised draft.  (Def. Exh. G at 101.)
- *November 25*: Gore replied, writing that he "found a few nits."  (*Id.*)
- *November 27, 12:43 p.m.*: Gore emailed Rachael Tucker and Robert Troester (both at DOJ): "Attached please find the near-final draft of the letter to Census."  (*Id.* at 142.)
- *November 27, 1:25 p.m.*: Gore emailed Gary: "[a] couple more nits in the attached." (Def. Exh. E at 38.)
- *November 30, 4:21 p.m.*: Gore emailed Gary: "I have received some nits back from the leadership offices, which are reflected in the attached redline and clean versions." (Def. Exh. G at 104.)
- *December 8, 3:14 p.m.*: Tucker emailed Gore: "I'm working to review this quickly. Will be back in touch shortly."  (ECF No. 22-7 at 102.)
- *December 8, 3:57 p.m.*: Gore emailed Gary: "Attached is a redline of the letter . . . With these changes, we are authorized to send."  (ECF No. 22-6, Def. Exh. E at 52.)

With the letter complete, Gary mailed and faxed it (the "Gary Letter") to Dr. Ron Jarmin of

the U.S. Census Bureau on December 12, 2017.  (*Id.* at 57.)  In March 2018, Secretary Ross

announced Commerce's intention to add the citizenship question, writing that "[f]ollowing receipt

of the DOJ request, I set out to take a hard look at the request and ensure that I considered all facts and data relevant to the question . . ."  (ECF No. 24-2, Pl. Exh. 1 at 2.)

In June of that year, Secretary Ross clarified, in a supplemental memorandum, that he had had the idea before DOJ's request, and that he had in fact asked DOJ to make the request: "my staff and I consulted with Federal government components and inquired whether [DOJ] would support, and if so would request, inclusion of a citizenship question as consistent with and useful for enforcement of the Voting Rights Act."  (ECF No. 24-4, Pl. Exh. 3 at 2.)  This supplemental memorandum indicates that not only did Commerce ask DOJ to make the request, it further supplied DOJ with the rationale for the request.  (*Id*.)  By the time Attorney General Sessions agreed to make the request, all DOJ had to do was draft and send it.

### A.  CLC's FOIA Request

On February 1, 2018 CLC submitted a FOIA request to three DOJ components: the Civil Rights Division (CRT), the Justice Management Division (JMD), and the Office of the Attorney General (OAG).  (ECF No. 22-6, Exh. A (FOIA Request) at 3.)  CLC asked DOJ to search for "[a]ny documents to, from, or mentioning Dr. Ron Jarmin or Dr. Enrique Lamas" and to use eight search terms: "2020 Census", "long form", "citizenship question", "question regarding citizenship", "ACS", "American Community Survey", "citizen voting age population", and "CVAP".  (*Id*.)

### B.  DOJ Component Responses to FOIA Request

#### 1.  CRT

CRT searched for responsive documents in the Voting Section and at the Office of the Assistant Attorney General (OAAG).  (ECF No. 22-5, Cooper Decl. ¶¶ 4–10.)  Senior staff in the Voting Section determined that all responsive records would be found in Chris Herren's Outlook account; Herren searched his account and located responsive documents.  (*Id*. ¶ 6.)  At the OAAG, the Director of Operational Management determined that Gore "was the only OAAG employee who

had a substantive role in the preparation of the Gary Census letter."  (*Id.* ¶ 9.)  Gore's Outlook account was first searched using the term "census," and later searched for emails on which Gary and Pickett were addressees.  (*Id.* ¶¶ 9, 12.)  On August 2, 2018, CRT conducted another search for "handwritten notes, drafts, or other hard copy documents."  (*Id.* ¶ 14.)

On September 26 and November 19, 2018, CRT released sixty-nine pages in full or in part, and withheld forty-two pages in full, pursuant to Exemption 5 and 6.  (*Id.* ¶¶ 16, 17.)  On May 8, 2018, CRT released an additional 114 pages of hard documents that were "inadvertently overlooked" from its earlier response.  (*Id.* ¶¶ 17, 18.)

CRT also processed a referral of sixteen pages from the Office of Information Policy (OIP), releasing twelve pages in their entirety, withholding two in full under Exemption 5, and referring two pages to the Office of Justice Programs (OJP), which released them to CLC.  (*Id.* ¶¶ 19, 20.)

## 2.  OAG/OIP

OIP is responsible for processing FOIA requests submitted to OAG.  (ECF No. 22-4, Brinkmann Decl. ¶ 1.)  In response to CLC's request, OIP used all of CLC's suggested search terms to search the "unclassified email records and computer hard drives" of ten records custodians.  (*Id.* ¶¶ 14–16.)  In light of the large number of potentially responsive records, CLC and OIP agreed to exclude various categories of records from the request.  (*Id.* ¶ 18.)  On March 29, 2019, OIP informed CLC that it had located 219 pages of responsive records.  (ECF No. 22-4, Def. Exh. D at 37.)  OIP also processed seventy pages referred by JMD.  (Brinkmann Decl. ¶ 19.)  Of those combined 289 pages, 91 were withheld in full and 21 withheld in part pursuant to Exemption 5. (*Id.*)

## 3.  JMD

Arthur Gary, JMD's General Counsel, conducted a "manual search of his emails for responsive records, using the search terms listed in the request."  (ECF No. 22-3, Allen Decl. ¶ 7.)

Officials familiar with the matter determined that no other employee would have non-duplicative responsive material.  (*Id.*)  JMD released 116 pages with some redactions under Exemptions 5 and 6 and withheld in full five draft letters attached to responsive emails.  (*Id.* ¶ 9.)

## II.    LEGAL STANDARD

### A.  <u>Summary Judgment</u>

Summary judgment is proper where the record shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Holcomb*, 433 F.3d at 895.  Courts must view "the evidence in the light most favorable to the non-movant[ ] and draw[ ] all reasonable inferences accordingly," and determine whether a "reasonable jury could reach a verdict" in the non-movant's favor.  *Lopez v. Council on Am.–Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016).

### B.  <u>FOIA</u>

FOIA cases are typically decided on motions for summary judgment.  *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  "FOIA provides a 'statutory right of public access to documents and records' held by federal government agencies."  *Citizens for Responsibility & Ethics in Wash. (CREW) v. U.S. Dep't of Justice*, 602 F. Supp. 2d 121, 123 (D.D.C. 2009) (quoting *Pratt v. Webster*, 673 F.2d 408, 413 (D.C. Cir. 1982)).  Federal agencies must comply with requests and make their records available to the public unless such "information

is exempted under [one of nine] clearly delineated statutory [exemptions]." *CREW*, 602 F. Supp. 2d
at 123; *see also* 5 U.S.C. §§ 552(a)–(b).  Summary judgment for the agency is only appropriate
when an agency proves that it has fully discharged its FOIA obligations.  *Moore v. Aspin*, 916 F.
Supp. 32, 35 (D.D.C. 1996).

      In cases challenging the applicability of certain FOIA exemptions, the district court conducts
a *de novo* review of the agency's decision to withhold requested documents under any
of FOIA's specific exemptions.  *See id*; 5 U.S.C. § 552(a)(4)(B).  The burden is on the agency to
show that nondisclosed, requested material falls within a stated exemption.  *See Petroleum Info.
Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C.
§ 552(a)(4)(B)).  Agencies may rely on supporting declarations that are reasonably detailed and
non-conclusory.  *See King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987) ("affidavits
cannot support summary judgment if they are conclusory, merely reciting statutory standards, or if
they are too vague or sweeping.").  The declarations must provide enough information "to afford the
FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to
review, the soundness of the withholding."  *Id.* at 218.  "If an agency's affidavit describes the
justifications for withholding the information with specific detail, demonstrates that the information
withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence
in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the
basis of the affidavit alone."  *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)
(citations omitted).  A motion for summary judgment should be granted in favor of the FOIA
requester, however, where "an agency seeks to protect material which, even on the agency's version
of the facts, falls outside the proffered exemption."  *Coldiron v. U.S. Dep't of Justice*, 310 F. Supp.
2d 44, 48 (D.D.C. 2004) (quoting *Petroleum Info. Corp.*, 976 F.2d at 1433).

In cases where the adequacy of a search is at issue, the agency "must show beyond material doubt [] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  The court employs a reasonableness test to determine whether an agency's search for responsive materials is adequate. *Rodriguez v. Dep't of Def.*, 236 F. Supp. 3d 26, 34 (D.D.C. 2017) (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998)).  "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). However, "evidence that relevant records have not been released may shed light on whether the agency's search was indeed adequate." *Weisberg*, 705 F.2d at 1351.  The court must accord agency affidavits "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).  "It is well-established" however "that a conclusory affidavit that gives 'no detail as to the scope of the examination . . . is insufficient as a matter of law' in demonstrating the adequacy of the search." *Am.-Arab Anti-Discrimination Comm. v. U.S. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 87 (D.D.C. 2007) (quoting *Weisberg v. U.S. DOJ*, 627 F.2d 365, 370 (D.C. Cir. 1980)).

### III.    ANALYSIS

Although "a motion for summary judgment cannot be 'conceded' for want of opposition," *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016), "[t]his does not mean . . . that the Court must assess the legal sufficiency of each and every [claim] invoked by the government in a FOIA case." *Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017).  Instead,

[w]here the FOIA requester responds to the government's motion for summary judgment without taking issue with the government's decision to withhold or to redact specific documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information and that, as to those records or information, there is no case or controversy sufficient to sustain the Court's jurisdiction.

*Id; see Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992).  Accordingly, the court will address only CLC's arguments in response to DOJ's motion for summary judgment.

**A.  <u>CRT</u>**

CLC alleges that CRT (1) conducted an inadequate search, and (2) improperly withheld responsive records.  (Pl. MSJ at 12–21, 27; ECF No. 27, Pl. Reply at 5–12, 14.)

1.  <u>CRT's search was inadequate</u>

Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents."  *Weisberg,* 705 F.2d at 1351; *see Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.").

CLC requested "all records pertaining" to the Gary letter, and as noted above, it recommended eight search terms.  (Cooper Decl. ¶ 2.)  The details of CRT's search are described more fully above, (*see supra* Part I(A),(B)), but it is sufficient here to reiterate that CRT's digital searches used only the search term "census" instead of any of the eight recommended by CLC.  (Cooper Decl. ¶¶ 6–10.)  CRT claims that two of the eight recommended terms are too general, but does not address the other six.  (*Id.* ¶ 15.)

This court is mindful that an agency has discretion in how it conducts a FOIA search, and that "[i]n general, a FOIA petitioner cannot dictate the search terms for his or her FOIA request." *Bigwood v. U.S. Dep't of Def.*, 132 F. Supp. 3d 124, 140 (D.D.C. 2015).  But an agency's discretion "is not boundless; the search terms selected must pass muster under a standard of reasonableness."

*Coffey v. Bureau of Land Management,* 249 F. Supp. 3d 488, 498 (D.D.C. 2017) (internal quotes omitted).  DOJ's use of a single search term for all the digital records does not pass muster under that standard.  It is likely that responsive digital documents exist which do not have the word "census" in them.  Thus, because only one search term was used, and that term was inadequate, the search was not "reasonably calculated to uncover all relevant documents." *Weisberg,* 705 F.2d at 1351.  As to this issue, the court will grant summary judgment for CLC.

 2.  <u>CRT improperly withheld records under the presidential communications privilege</u>

 CRT withheld twenty-three pages of email correspondence between DOJ attorneys and White House staff under the presidential communications privilege, and thus under Exemption 5.[2] (ECF. No. 22-8, CRT *Vaughn* Index, Group 7; 5 U.S.C. § 552(b)(5).  The correspondence deals with notifying Congress of DOJ's request for a census citizenship question.  (CRT *Vaughn* Index, Group 7.)  Exemption 5 shields documents that would "normally [be] privileged from discovery in civil litigation against the agency," including documents protected by the presidential communications privilege. *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997).  To withhold a document under Exemption 5, the "document must meet two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Stolt-Nielsen Transp. Grp. Ltd. v. U.S.,* 534 F.3d 728, 733 (D.C. Cir. 2008) (citations and internal quotation marks omitted).  There is no dispute that the first condition is met here; the parties' dispute is directed to the second condition.

 The presidential communications privilege (and thus Exemption 5) protects "communications directly involving and documents actually viewed by the President, as well as

---

[2] OIP also withheld this set of emails under the deliberative process privilege, which is addressed below. (*See infra* Part III(A)(3).)

documents solicited and received by the President or his immediate White House advisers [with] . . .
broad and significant responsibility for investigating and formulating the advice to be given the
President." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (internal quotations omitted)
(alterations in original).

DOJ has not asserted sufficient facts to show that the documents at issue were protected by
the privilege.  (*See* Def. MSJ; ECF No. 26, Def. Reply; Cooper Decl.; CRT *Vaughn* Index; ECF No.
26-2, 2d Cooper Decl.)  DOJ does not assert, for example, that the President was involved in the
communications or that the President viewed any of the documents related to the communications,
or that the communications related to advice to be given to the President.  (*Id.*)

Absent these assertions, the privilege does not apply.  "The presidential communications
privilege should never serve as a means of shielding information regarding governmental operations
that do not call ultimately for direct decisionmaking by the President." *In re Sealed Case*, 121 F.3d
729, 752 (D.C. Cir. 1997).  DOJ does describe the communications as a "subject of potential
presidential decisionmaking" (Def. Reply at 19), but does not state that the President actually did
make the decision or that the communications were "made by presidential advisers in the course of
preparing advice for the President." *Judicial Watch, Inc. v. United States Dep't of Def.*, 913 F.3d
1106, 1111 (D.C. Cir. 2019).  Accordingly, the presidential communications privilege does not
apply, and summary judgment will be granted for CLC as to the withholding of this material under
this privilege.

3.  CRT's withholdings under the deliberative process privilege

CLC contests all of CRT's withholdings pursuant to the deliberative process privilege under
Exemption 5.[3]  (Pl. MSJ at 12, 16.)  The deliberative process privilege protects materials that are

---

[3] DOJ argues that this court should grant summary judgment in favor of DOJ as to some of the
documents because CLC does not address each document individually.  (Def. Reply at 5.)  Though

"predecisional" and "deliberative." *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1537 (D.C. Cir.

1993).   The court will address the withholdings under this privilege in five groups: (i) the drafts and

email correspondence related to the Gary Letter, (ii) the 2016 memoranda from CRT to JMD, (iii)

the email thread between DOJ and the White House, and (iv) the memorandum from Uthmeier to

Gore.

### i.   Drafts and email correspondence related to the Gary Letter

Under the deliberative process privilege, CRT withheld drafts of the Gary Letter as well as

portions of emails discussing the drafts.   (CRT *Vaughn* Index, Group 1, 3, 4, 8.)   The critical issue is

whether the documents are "predecisional."   *Mapother,* 3 F.3d at 1537.   Documents are

predecisional if they were "prepared in order to assist an agency decisionmaker in arriving at his

decision, rather than to support a decision already made."   *Petroleum Info. Corp.,* 976 F.2d at 1434

(citations and internal quotation marks omitted).

CLC argues that none of the documents are predecisional because they were created after

Commerce decided to add the citizenship question to the Census and after DOJ decided to issue the

letter requesting that question.   (Pl. MSJ at 14–17.)   Defendant does not dispute this timeline, but

argues that the documents are predecisional because they were created before the letter was

finalized.   (Def. MSJ at 10–11.)   The parties thus agree on the sequence of events, but disagree

about what constitutes the relevant agency decision: the decision to write the letter, or the decision

about the letter's final contents.

The inquiry can be circular.   Indeed, every draft postdates the decision to write it, *and*

simultaneously predates the decision of what to include in it.   Such is the case here: the drafting

---

it is true that CLC's arguments are tailored to certain document categories, that does not undermine
the fact that CLC explicitly contests all the withholdings.   (Pl. MSJ at 12.) ("DOJ has not met its
burden with respect to materials it claims are protected by the deliberative process privilege because
it has not shown that the withheld materials are predecisional and deliberative in nature.").

process postdated Attorney General Session's decision to issue the letter, but undeniably predated the decision about the final contents of the letter.  In this regard, Plaintiff and Defendant are both right: the disputed materials are predecisional, but they are also postdecisional.  The ultimate question is what constitutes the relevant decision for Exemption 5.

As Wright & Miller have observed, "[d]efining 'decision' for purposes of the privilege is no easy task." 26A Charles Alan Wright et al., Fed. Practice & Procedure § 5680 (1st ed. 1992). Though there is no well-established test for identifying the relevant decision, cases in this Circuit do provide some guidance.  First, they suggest that the relevant decision in any given case is one that involves discretion about what an agency position or agency policy should be.[4]  The D.C. Circuit has held, for example, that documents did not fall under Exemption 5 because they "were not suggestions or recommendations as to what *agency policy* should be." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (emphasis added).  The Court later elaborated on this principle:

> To fall within the deliberative process privilege, materials must bear on the formulation or exercise of agency policy-oriented judgment . . . [W]hen material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable.

*Petroleum Info. Corp.*, 976 F.2d at 1435 (D.C. Cir. 1992).

Consistent with this language, this Circuit has held that drafts showing the exercise of "agency policy-oriented judgment" are in fact predecisional.  *See Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002).  In *Dudman Commc'ns Corp. v. Dep't of Air Force*, 815

---

[4] This does not mean that a relevant agency decision *must* involve a formal policy.  *See Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011) ("even if an internal discussion does not lead to the adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.") (citing *Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992).

F.2d 1565, 1565 (D.C. Cir. 1987), the D.C. Circuit withheld a preliminary draft of a historical work published by the Air Force about operations in South Vietnam between 1961 and 1964.  The drafting process involved decisions about the agency's historical conclusions and representations to the public.  *Id.* at 1566.  In *Radiation Sterilizers*, *Inc. v. U.S. Dep't of Energy*, No. 90-880, 1991 U.S. Dist. LEXIS 4669 (D.D.C. Apr. 9, 1991), the Court withheld documents from a drafting process that determined what data and conclusions should be included in an interim report to Congress about a chemical leak.  Likewise, in *Brown v. Dept. of State*, 317 F. Supp. 3d 370, 370 (D.D.C. 2018), the court withheld documents produced in preparation for court filings and for a letter to Congress.

The facts of this case are significantly different.  The letter at issue did not involve discretion about an agency position or about the primary reasons for the agency position.  The agency's position and the reasons for the letter had already been decided.  Thus, the drafting did not demonstrate "the process by which policy is formulated," nor could it "reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment." *Petroleum Info. Corp.*, 976 F.2d at 1434 (D.C. Cir. 1992).

Moreover, Gary and Gore were not drafting the document so that a supervisor or colleague could decide a particular issue.  In *Coastal States*, the D.C. Circuit held that "a document from a subordinate to a superior official is more likely to be predecisional."  617 F.2d at 868.  This is because such documents generally aid in the decisionmaking process about an agency's position.  Thus, in *Access Reports v. Dep't of Justice*, the D.C. Circuit upheld withholding a document that a low-level employee created for supervisors who had asked for research on a particular issue.  926 F.2d 1192, 1196-97 (D.C. Cir. 1991).  Such documents are quintessentially predecisional—they are created to help the agency make a decision.  *See Krikorian v. Dept. of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) (withholding a document from subordinates to supervisors that proposed two

14

options for how to respond to public inquiries about a recent agency decision regarding a genocide); *United Am. Fin., Inc. v. Potter*, 531 F. Supp. 2d 29, 44 (D.D.C. 2008) (withholding investigative notes that were provided to an office to assist it in writing a report to employees about identity theft against the agency); *Blank Rome LLP v. Dep't of the Air Force*, No. 15-cv-1200 (RCL), 2016 U.S. Dist. LEXIS 128209, at *14, *35 (D.D.C. Sept. 20, 2016) (withholding draft documents that assisted the Air Force in coming to a decision regarding a settlement proposal).

Here, the contested documents do not fit that mold. They were not used to help the agency make a decision, but rather were used to communicate the decision.[5] If the materials in question were drafts of documents that Gore and Gary prepared for Attorney General Sessions before he decided to request the citizenship question, they would be squarely predecisional. But that was not their purpose. While Gore did email the draft to supervisors before it was sent to the Census Bureau, it is telling that in the email he wrote that he was sending them a "near-final" draft. (Def. Exh. G at 142.) In other words, the draft was not provided to supervisors to help them make a decision. The decision had already been made, and the supervisors were reviewing Gore's implementation of it. (*See id.*)

The court is mindful of the D.C. Circuit's directive that Exemption 5 should be construed narrowly. "In light of the FOIA's strong policy in favor of disclosure . . . Exemption 5 is to be construed as narrowly as consistent with efficient Government operation." *Petroleum Info. Corp.*,

---

[5] Decisions about how to message agency policy to the public can be predecisional. *See Hooker v. HHS*, 887 F. Supp. 2d. 40, 40 (D.D.C. 2012) (withholding drafts of a publication about vaccine safety); *Hunton & Williams LLP v. U.S. EPA*, Civ. A. No. 15-1203, 2018 U.S. Dist. LEXIS 166174 at *9 (D.D.C. Sept. 27, 2018) (withholding drafts of letters to non-profits and emails discussing communications strategy); *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 20 (D.D.C. 2004) (withholding documents related to the agency's response to a congressional inquiry.) In fact, a court recently held that the contested documents in this case constituted "messaging." *See New York v. U.S. Dep't of Commerce*, Civ. A. No. 18-2921, 2018 U.S. Dist. LEXIS 1772468 at *20 (S.D.N.Y. Oct. 5, 2018). These cases are inapplicable here because DOJ concedes that the withheld materials are not messaging documents. (Def. Reply at 13 n.8.)

976 F.2d at 1434 (internal quotations omitted); *see also Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 773 (D.C. Cir 1988).  Consequently, the court finds that the relevant decision for purposes of Exemption 5 is the one made by Attorney General Sessions to request the citizenship question, not the decision about the final contents of the letter.  The emails sent and the drafts written after that decision are thus not predecisional and cannot be withheld under Exemption 5.  Because the documents are not predecisional, the court need not decide whether they are deliberative, and will grant summary judgment for CLC as to the Exemption 5 withholdings of these documents (CRT *Vaughn* Index, Groups 1, 3, 4, 8).

### ii.   2016 memoranda sent from CRT to JMD

CRT withheld two memoranda it sent to the Justice Management Division in 2016, citing the deliberative process privilege.  (CRT *Vaughn* Index, Group 5.)  The memoranda contain recommendations for new census questions.  (*Id.*)  Though CLC generally contests all withholdings under the deliberative process privilege, it advances no specific arguments as to why the privilege does not cover these memoranda.  The court agrees with DOJ that "these two memoranda are predecisional because they were drafted before JMD made any decisions concerning whether to suggest new questions to the U.S. Census Bureau."  (Cooper Decl. ¶ 27; Def. MSJ at 11.)  Further, the documents are deliberative because they are "a part of the agency give-and-take of the deliberative process by which the decision itself is made."  *Vaughn v. Rosen,* 523 F.3d 1136, 1144 (D.C. Cir. 1975).  Because the material is predecisional and deliberative, the deliberative process

privilege applies, and the court will grant summary judgment for DOJ as to these documents (CRT *Vaughn* Index, Group 5).

    *iii.   DOJ-White House email thread*

In addition to withholding these documents under the presidential communications privilege (which the court has found to be inapplicable), CRT also invokes the deliberative process privilege.[6] At this point, however, the court is unable to rule on whether the deliberative process privilege applies because DOJ does not specify what portions of the records are covered by it.  While the *Vaughn* Index states that the documents are "withheld in full pursuant to Exemption 5 (DPP)," DOJ's Reply brief asserts the documents are only "partially protected by the deliberative process privilege."  (CRT *Vaughn* Index, Group 7; Def. Reply at 20.)  Further, in discussing this material, the OIP Declaration acknowledges that DOJ has apparently not decided what portions may be protected.  (Brinkmann Decl., ¶ 28) (describing the documents as "partially or fully protected by the deliberative process privilege.").

Because the court has determined that the presidential process privilege is inapplicable, DOJ must decide what portions of the responsive documents are covered by the deliberative process privilege.  Once it does, DOJ has a duty to segregate and produce any portions not covered by Exemption 5.  5 U.S.C. § 522(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection.").  Accordingly, the court will deny summary judgment for both DOJ and CLC as to the

---

[6] The documents consist of twenty-three pages of email correspondence between DOJ attorneys and White House staff related to Congressional notification about the citizenship question.  (CRT *Vaughn* Index, Group 7).

applicability of the deliberative process privilege to these records and order DOJ to make that determination.

### iv.   Memorandum from Uthmeier to Gore

Citing the deliberative process, the attorney work product, and the attorney client privileges, CRT withheld a handwritten cover note and memorandum from "Janes [sic] Uthmeier" to John Gore.  (CRT *Vaughn* Index, Group 6; Cooper Decl. ¶ 28.)  Both documents are undated, but CRT asserts that Gore received them in 2017.  (2d Cooper Decl. ¶ 3(c).)  While CLC challenges all withholdings under the deliberative process privilege, CLC does not challenge withholding this material under the attorney work product privilege or the attorney client privilege.  (Pl. MSJ at 14, 21–23.)  Therefore, the material is exempt from disclosure and the court need not consider whether the deliberative process privilege also applies.  Summary judgment will be granted for DOJ as to this material.

### B.   <u>OIP</u>

CLC argues that OIP improperly withheld material under the (1) presidential communications privilege, (2) attorney work product privilege, and (3) deliberative process privilege.  (Pl. MSJ at 12–13, 20–23.)

### 1.   <u>Presidential communications privilege</u>

Like CRT, OIP invokes the presidential communications privilege for email exchanges between DOJ and the White House.  (*See* Def. Reply at 20 n.11.)  The court determined that, for CRT, the privilege does not apply, and its reasoning applies to OIP as well.  (*See infra* Part III(B)(3)(ii).)  DOJ does not claim that the President was or would be involved in the subject of communication.  *See Loving*, 550 F.3d at 37.  While the OIP declaration is more thorough than CRT's (for example, it contends that the subject of communication is one of "presidential concern and decision"), it still falls short of asserting that the President was actually involved or would be

involved in this decision in any capacity.  (Brinkmann Decl. ¶ 28.)  The court therefore holds that

the presidential communications privilege does not shield these documents.[7]

### 2.   Attorney work product privilege

Citing the attorney work product privilege, OIP withheld 24 pages of draft responses to

interrogatories from the United States Commission on Civil Rights (USCCR).  (ECF No. 22-4, Def.

Exh. F, OIP *Vaughn* Index, at 45.)  The attorney work product privilege, under Exemption 5,

protects material that can "fairly be said to have been prepared or obtained because of the prospect

of litigation."  *In re Sealed Case*, 146 F. 3d 881, 884 (D.C. Cir. 1998).  The D.C. Circuit has "long

required a case-specific determination" for whether the privilege applies.  *Nat'l Ass'n of Criminal*

*Def. Lawyers v. Dep't of Justice Exec. Office for U.S. Attorneys*, 844 F.3d 246, 251 (D.C. Cir.

2016).  That determination requires a "because-of" test: whether, "in light of the nature of the

document and the factual situation in the particular case," the document was prepared or obtained

"because of the prospect of litigation."  *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir.

2010) (internal quotations omitted.).

DOJ does not contend that the Commission's request itself constitutes litigation, but rather

that the request put OIP in reasonable anticipation of future litigation.  (Def. Reply at 17–19; Def.

MSJ at 12–13; Brinkmann Declaration ¶ 35.)  According to DOJ, "given that citizen complaints

alleging discrimination often prompt Commission investigations, it is reasonable for a party

receiving interrogatories from the Commission to anticipate that . . . the matter in question might

lead to litigation . . ."  (Def. Reply at 18.)

---

[7] The court will address below whether the deliberative process privilege also applies to this
material.  (*See infra* Part III(B)(3)(ii).)

Even if this is true, however, it does not follow that the interrogatory responses were created "because of" litigation.  *See Deloitte LLP*, 610 F.3d at 137.  Absent an assertion to the contrary, it appears that OIP would have responded to the interrogatories regardless of whether it thought litigation would ensue.  (*See* Def. Reply.)  The court agrees with CLC that the draft responses were created "not because of the prospect of litigation, but to provide information" to Congress.  (Pl. Reply at 11.)  Because they were not prepared "because of" litigation, the attorney work product privilege (and thus Exemption 5) does not apply to them.[8]

3.  <u>Deliberative Process Privilege</u>

CLC contests all OIP withholdings under the deliberative process privilege.  (Pl. MSJ at 12.) The withholdings will be addressed in the following groups: (i) Gary Letter drafts and emails, (ii) DOJ-White House Correspondence, (iii) draft USCCR Interrogatories, (iv) press inquiries, and (iv) remaining withholdings that lack sufficient explanation.

i.      *Gary Letter drafts and emails*

For the reasons stated above regarding CRT's withholding of the Gary Letter draft documents, the deliberative privilege is also inapplicable to OIP's withholding of those documents. (*See infra* Part III(B)(3)(v).)  Accordingly, the court will grant summary judgment for CLC and order DOJ to release the documents identified in the OIP *Vaughn* index with Bates numbers OIP 107-109; OIP-116–119; OIP-122–124, and OIP-127.

ii.     *DOJ-White House Correspondence*

OIP claims the presidential communications privilege and the deliberative process privilege covers this material. (Def. Exh. F, OIP *Vaughn* Index, at 46; Brinkmann Decl. ¶ 28, 29; ECF No.

---

[8] DOJ's argument that these documents are also exempt from disclosure under the deliberative process privilege will be addressed below. (*See supra* Part III(B)(3)(i)–(iv).)

26-1, 2d Brinkmann Decl., ¶ 9-15.)  As already discussed, however, DOJ does not specify which portions of the material are actually protected by the deliberative process privilege.  (*See supra* Part III(A)(3)(ii).)  Accordingly, the court will deny summary judgment for both CLC and DOJ and direct DOJ to indicate what material the privilege protects and to release the remainder to CLC.

### iii.      *Draft USCCR Interrogatories*

Having determined that the attorney work product privilege does not apply to the draft interrogatory responses, the court now addresses DOJ's assertion that the documents are also "protected in their entireties" by the deliberative process privilege.  (Brinkmann Decl. at 16 n.8; ¶ 26; Def. Reply at 10.)  OIP contends that they are deliberative because they reflect "deliberations regarding the content of documents" and they are pre-decisional because they "precede the creation and/or transmission of final Department documents . . ."  (Brinkmann Decl. ¶27.)  CLC argues that DOJ has not shown that the privilege applies because there is "no policy decision to which these draft responses apply and therefore no applicable privilege."  (Pl. Reply at 11 n.9.)

The court does not have enough information to determine whether the privilege applies.  It is undisputed that the drafts were created before being sent to the Commission, and that they reflect deliberations about the contents of the documents.  (*See* Def. Exh. G. at 18–76.)  But DOJ has not disclosed what types of decisions were involved in drafting the interrogatory responses.  As a result, the Court has no way of knowing whether the contents of these documents reflect "the formulation or exercise of . . . policy-oriented judgment."  *Prop. of the People, Inc. v. Office of Mgmt. and Budget*, 330 F. Supp. 3d 373, 382 (D.D.C. 2018) (quoting *Petroleum Info. Corp.*, 976 F.2d at 1435).

"Where an agency fails to meets its burden," FOIA provides courts 'a host of procedures' to determine whether the exemption claim is proper, including discovery, further agency affidavits, and in camera review of the records in question."  *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 55 (D.D.C. 2019) (quoting *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980)).  Here, the court will

direct DOJ to provide further declarations, and will deny both parties' motions for summary

judgment on this issue.

### iv.    Press inquiries

Citing the deliberative process privilege, OIP withheld three pages of "internal emails

among DOJ staff containing deliberations about how to respond to press inquiries."  (Brinkmann

Decl. ¶ 30; Def. Exh. 5, OIP *Vaughn* Index, documents identified as JMD 63, 67–68.)  DOJ relies

on *Competitive Enter. Inst. v. EPA*, 232 F. Supp. 3d 172, 187-88 (D.D.C. 2017), which held that

"[e]mails 'generated as part of a continuous process of agency decision-making regarding how to

respond to' a press inquiry are protected by the deliberative process privilege."  *Id.*  (quoting

*Judicial Watch v. Dep't of Transport.*, 796 F. Supp. 2d 13, 31 (D.D.C. 2011).).  CLC, while

generally contesting all deliberative process privilege withholdings, does not advance any specific

arguments regarding these documents.

The D.C. Circuit has not addressed whether the deliberative process privilege applies to

responses to press inquiries, but numerous trial courts in this District have held that it does.  *See,

e.g.*, *Gellman v. Dep't of Homeland Sec.,* No. 16CV635, 2020 WL 1323896, at *12 (D.D.C. Mar.

20, 2020) ("the overwhelming consensus among courts in this District is that discussions about how

to respond to the press are protected by this privilege.") (internal quotations omitted); *American

Center for Law & Justice v. U.S. Dep't of State,* 330 F. Supp. 3d 293, 302 (D.D.C. 2018) ("the

deliberative process privilege applies to documents generated in the crafting of an agency's public

statements"); *Comm. on Oversight & Gov't Reform v. Lynch*, 156 F. Supp. 3d 101, 111-12 (D.D.C.

2016) (privilege covers deliberations about how to respond to press inquiries regarding a law

enforcement initiative).

This court finds the reasoning of other courts in this District on this issue to be persuasive.

The documents are pre-decisional because they were created before the agency responded to a press

inquiry, and they are deliberative because they are "a part of the agency give-and-take of the deliberative process by which the decision itself is made." *Vaughn,* 523 F.3d at 1144. Accordingly, the deliberative process privilege applies and the court will grant summary judgment for DOJ as to these documents. (Def. Exh. D, OIP *Vaughn* Index, documents identified as JMD 63, 67–68.)

v.   *Withholdings lacking sufficient explanation.*

"Affidavits submitted by a governmental agency in justification for its exemption claims must . . . enable 'the District Court to make a rational decision whether the withheld material must be produced . . .'" *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987) (quoting *Dellums v. Powell*, 642 F.2d 1351, 1360 (D.C. Cir. 1980). "[T]he need for a detailed description 'is of particular importance . . . where the agency is claiming that the documents are protected by the deliberative process privilege under Exemption 5.'" *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 295 (D.D.C. 2007) (quoting *Edmonds Inst. v. U.S. Dep't of Interior*, 383 F. Supp. 2d 105, 108 n.1 (D.D.C. 2005). "To accept an inadequately supported exemption claim 'would constitute an abandonment of the trial court's obligation under the FOIA to conduct a *de novo* review.'" *King*, 830 F.2d at 219 (quoting *Allen*, 636 F.2d at 1293).

The court finds that OIP has not provided enough information for the court to determine whether the privilege applies to several of the documents or portions thereof. The first is described in the *Vaughn* Index as "Draft Correspondence between JMD and Department of Commerce." (Def. Exh. F, OIP *Vaughn* Index, final version released under "JMD-5.") The Brinkmann Declaration states only that the documents "consist of draft versions of Department correspondence with Congress or other federal agencies." (Brinkmann Decl. ¶ 26.) A second document is described in the *Vaughn* index as "Draft Correspondence with Representative Gonzalez." (Def. Exh. F, OIP *Vaughn* Index, final version released under "OIP 2-3.") Here too, the only additional

information is that it "consist[s] of draft versions of Department correspondence with Congress or other federal agencies."  (Brinkmann Decl. ¶ 26.)

Two more documents withheld in part are described in the *Vaughn* Index as "Deliberative Discussions Regarding Inter-agency Correspondence."  (Def. Exh. F, OIP *Vaughn* Index, OIP 105, 113.)  One is dated December 19, 2017, and the other December 12, 2017 (the day the Gary Letter was sent to Commerce).  (ECF No. 22-2, Def. SOF, ¶ 46.)  The Brinkmann Declaration asserts generally that these documents "consist of internal emails among DOJ staff providing advice and recommendations regarding a particular piece of correspondence with another agency." (Brinkmann Decl. ¶ 30.)  Another document is described as "Deliberative Discussions Regarding Congressional Correspondence." (Def. Exh. F., OIP *Vaughn* Index, JMD 23.)  The Brinkmann Declaration explains that this document "consist[s] of internal discussions among DOJ staff regarding an inquiry from Congress."  (Brinkmann Decl. ¶ 30.)

OIP also withheld three pages described as "deliberative discussions regarding the drafting process" but does not describe what is being drafted.  (Def. Exh. F, OIP *Vaughn* Index, JMD 39, OIP 101–103.)  The *Vaughn* Index does include the subject line of these emails ("RE: Letter in Response to Census Bureau Letter Re: Citizenship on 2020 census" and "Re: APPROVAL: Statement in Response to Citizenship Question on Census"), but that is not enough for the court to understand the nature of the letters or statements being drafted.  (*Id*.)  OIP also withheld three pages in part described as "Deliberative Discussions Regarding the Census and/or ACS."  (Def. Exh. F, OIP *Vaughn* Index, JMD 2–3, 7.)  The Brinkmann Declaration adds that these pages "consist of internal emails among DOJ staff reflecting advice, preliminary research, and opinions, and analysis regarding the census or American Community Survey."  (Brinkmann Decl. ¶ 30.)  They are dated March 6 and 7, 2017.  (Def. Exh. F, OIP *Vaughn* Index, JMD 2–3, 7.)  There is no information provided as to whether the "research" is general, or if this communication is aimed at a decision,

such as whether census questions should be added, as was the case in CRT's withheld memoranda about the census.  (*See supra* Part III(B)(3)(v).)

The court lacks the information necessary to determine whether the privilege applies to any of these documents.  It is not enough to say that something is a draft or to say that it was deliberative; more information is needed.  *Judicial Watch. Inc. v. U.S. Postal Service*, 297 F. Supp. 2d 252, 261 (D.D.C. 2004) ("[D]rafts are not presumptively privileged.")  Summary judgment will thus be denied as to these documents for both DOJ and CLC.

## C.  **JMD**

CLC alleges that JMD conducted an inadequate search and improperly withheld responsive records.  (Pl. MSJ at 25, 26.)

### 1.  JMD's search was adequate

Under FOIA, an adequate search is "reasonably calculated to uncover all relevant documents."  *Weisberg,* 705 F.2d at 1351; *see Oglesby*, 920 F.2d at 68 ("[T]he agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.").  As noted above, JMD's General Counsel, Arthur Gary, conducted a "manual search of his emails for responsive records, using the search terms listed in the request."  (Allen Decl. ¶ 7.)  Officials familiar with the matter determined that no other employee would have non-duplicative responsive material.  (*Id.*)

CLC argues that JMD should have also searched for paper and electronic records, such as word documents saved to Gary's computer.  (Pl. MSJ at 26.)  It also contends that Gary's manual search of his own documents is unreliable.  (Pl. Reply at 13.)  DOJ rests on its supporting declaration, stating that "it was determined that no other custodians would have responsive material that would not already be captured by the search of Mr. Gary's email."  (Allen Decl. ¶ 7.)

JMD's search may have been limited in scope, but there is no evidence to suggest that it was inadequate.  Individuals with knowledge of the process determined where the records would be found, and JMD used all CLC's requested search terms to search that source.  The court concludes that JMD "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby,* 920 F.2d at 68.  As to this issue, summary judgment will be granted for DOJ.

2.   <u>JMD's withholdings under the Deliberative Process Privilege</u>

Invoking the deliberative process privilege, JMD withheld in full or in part: (i) fourteen pages of draft versions of the Gary Letter, (ii) one page of an unspecified "draft response," and (iii) one page of an email from Barry Robinson to Arthur Gary.  (Allen Decl. at 9.)

i.   *Drafts of the Gary Letter*

For the reasons stated above (*see supra* Part (III)(B)(3)(i)), the court will grant summary judgment for CLC with respect to the fourteen pages of drafts of the Gary Letter.  Because the relevant decision is DOJ's decision to issue the letter, these drafts are not pre-decisional and thus may not be withheld pursuant to the deliberative process privilege under Exemption 5.

ii.   *"Draft response"*

The record provides very little information about this draft letter.  The *Vaughn* Index establishes that it is dated February 13, 2018, so it does not appear to be another draft of the Gary Letter (which was finalized in December 2017.)  The title of the document in the *Vaughn* Index is "Draft Response. Census. Honorable Vicente Gonzalez" but the description states only that "this is a draft letter."  (Allen Decl. at 9.)  Neither the JMD declaration nor the briefing provide any additional information.  With so little information, the court cannot meaningfully determine whether the draft properly falls under Exemption 5.  *See King v. DOJ*, 830 F. 2d 210 (D.C. Cir. 1987) ("Affidavits submitted by a governmental agency in justification for the claimed exemption must . .

. enable the District Court to make a rational decision whether the withheld material must be produced . . .") (internal quotations omitted).  Drafts are not presumptively privileged, and the court must consider whether the document was pre-decisional (and what the relevant decision is), as well as whether the document was deliberative.  *See Judicial Watch. Inc.*, 297 F. Supp. 2d at 260.  On the current record, the court cannot make such a determination.  The court will therefore deny summary judgment for both DOJ and CLC and direct JMD to provide an additional declaration.

> iii.    *Robinson-Gary Email*

The record also provides insufficient information about this email.  JMD's *Vaughn* index states only that "this is an interagency communication discussing how the Commerce Department is considering handling a matter."  (Allen Decl. at 8.)  DOJ's briefing provides no further elucidation.  (Def. MSJ; Def. Reply at 14.)  JMD's declaration states that the email was an "inter-agency discussion[] between [] Commerce and [DOJ] employees related to agency decision-making.  (Allen Decl. ¶ 18.)  This information is not enough for the court to make a meaningful decision about whether the records were properly withheld under Exemption 5.  As to this email, then, the court will deny summary judgment for DOJ and CLC and direct JMD to supply an additional declaration.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted in part and denied in part, and Plaintiff's cross-motion for summary judgment will be granted in part and denied in part. A corresponding Order will follow shortly.

Date:  June 1, 2020

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge