**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CAMPAIGN LEGAL CENTER,** | |
| Plaintiff, | |
| v. | Civil Action No. 18-cv-1771 |
| **UNITED STATES DEPARTMENT OF JUSTICE,** | |
| Defendant. | |

## MEMORANDUM OPINION

In 2017, Arthur Gary, then General Counsel of the Department of Justice ("DOJ") Management Division, drafted and sent a letter to the Census Bureau requesting the addition of a citizenship question to the census. Former Secretary of Commerce Wilbur Ross directed the Census Bureau to do so. Plaintiff Campaign Legal Center then filed a Freedom of Information Act ("FOIA") request with Defendant seeking documents relating to how and why the Census Bureau arrived at its decision. Both parties cross-moved for summary judgment regarding Defendant's withheld documents across six categories. Pl.'s Renewed Cross-Mot. for Summ. J.at 1–25, ECF No. 65 ("Pl.'s Mot."); Def.'s Mem. of L. in Opp'n to Pl.'s Renewed Cross-Mot. for Summ. J. and in Supp. of Def.'s Renewed Cross-Mot. for Summ. J. at 1–29, ECF No. 68 ("Def.'s Mot."). For the reasons explained below, the court will GRANT IN PART and DENY IN PART the parties' cross-motions.

I.    **BACKGROUND**

A.  **Factual Background**

The court provided the factual background of this matter in its previous Memorandum Opinion. *Campaign Legal Ctr. v. U.S. Dep't of Just.*, No. 18-cv-1771, 2020 WL 2849909, at *1–3 (D.D.C. June 1, 2020) ("*Campaign Legal Ctr. I*"), *rev'd in part Campaign Legal Ctr. v. U.S. Dep't of Just.*, 34 F.4th 14 (D.C. Cir. 2022) ("*Campaign Legal Ctr. II*").  In that opinion, the court decided that it lacked sufficient information to determine whether the following categories of documents were protected from disclosure:

i.    DOJ-White House Correspondence, consisting of "emails between Department attorneys and individuals in the White House seeking advice" regarding notifying Congress of "DOJ's request for [a] citizenship question on the census"; Fifth Brinkmann Decl. ¶ 8, ECF No. 69-2; Def.'s Mot., Ex. A at 1–10, ECF No. 68-2 ("Def.'s Ex. A");

ii.   Draft United States Commission for Civil Rights' ("USCCR") Interrogatories, containing two versions of DOJ's draft responses to USCCR's interrogatories; Fifth Brinkmann Decl. ¶ 18; Def.'s Mot., Ex. B at 1–47, ECF No. 68-2 ("Def.'s Ex. B").

iii.  Discussions of Proposed Response to the Washington Post, containing emails between DOJ officials regarding the "proposed response to questions from the Washington Post editorial board related to the addition of a citizenship question to the 2020 Census." Fifth Brinkmann Decl. ¶ 25; Def.'s Mot., Ex. C at 1–3, ECF No. 68-2 ("Def.'s Ex. C").

iv.   Draft Correspondence to Representative Gonzalez, consisting of "separate drafts of a letter from [former] Assistant Attorney General Stephen Boyd to Representative Vicente Gonzalez in response to a January 9, 2018 letter from Representative Gonzalez to the Attorney General seeking information regarding the addition of a citizenship question to the 2020 Census."  Fifth Brinkmann Decl. ¶ 30; Decl. of Jeanette Plante ¶¶ 6–9, 12–13, ECF No. 68-3 ("Plante Decl.").

v.    Deliberative Discussions Regarding the Census and/or American Community Survey ("ACS"), documents wherein "a new Department leadership official seeks to understand aspects of past DOJ involvement in the Census or ACS, in anticipation of the 2020 Census and DOJ's involvement."  Fifth Brinkmann Decl. ¶ 35; Def.'s Ex. C at 1–3.

vi.   Draft Correspondence Between the Justice Management Division ("JMD") and Commerce, including documents in which DOJ reviews "the questions asked on its behalf in the American Community Survey" and affirms "that the legal authority supporting

[DOJ's] use of that information was accurate and complete." Fifth Brinkmann Decl. ¶ 40; Def's Mot., Ex. D at 1–4, ECF No. 68-2 ("Def.'s Ex. D")

*Campaign Legal Ctr. I*, at *9–13. Each of these categories remains in dispute, and the parties have now renewed their motions for summary judgment. ECF Nos. 65, 68.

### B. Procedural History

After *Campaign Legal Center I*, DOJ appealed the portion of the court's order pertaining to the deliberative privilege process, and while that appeal was pending the parties submitted renewed cross-motions for summary judgment. ECF Nos. 32,48, 52. The D.C. Circuit reversed in part this court's decision in *Campaign Legal Cetner I* and remanded. *Campaign Legal Ctr. II*, 34 F.4th at 29. The Circuit found that the "process of drafting the Gary Letter to request the addition of a citizenship question . . . involved the exercise of policymaking discretion, and so the letter's content itself was a relevant final decision" protected by FOIA's deliberative process privilege. *Id.* at 18. The Circuit thus held that DOJ properly withheld non-final drafts of the letter, and that most of DOJ's redactions of associated emails were lawful. *Id.* The Circuit also found that the record did not establish whether several redacted emails were pre-decisional and deliberative, and remanded for this court to reexamine those documents. *Id.* at 18–19. DOJ chose, however, to produce those emails during the pendency of litigation so they are no longer in dispute. *See* ECF No. 59.

The Circuit's mandate issued on July 11, 2022, ECF No. 57, and on August 7, 2022, the court instructed the parties to meet and confer, and to file a Joint Status Report setting forth their respective positions on the impact of the Circuit's decision, *see* Aug. 7, 2022 Min. Order. The court then held a status conference on August 19, 2022, to discuss the parties' positions. It then

denied without prejudice both parties' pending motions for summary judgment.  ECF Nos. 61.

The parties then renewed their cross-motions for summary judgment.  ECF Nos. 65, 68.

## II.    LEGAL STANDARDS

### A.  Summary Judgment

Summary judgment is appropriate where there is no genuine disputed issue of material fact.

Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  "An issue is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination."  *Id*.  Courts must view "the evidence in the light most favorable to the non-movant [ ] and draw[ ] all reasonable inferences accordingly," and determine whether a "reasonable jury could reach a verdict" in the non-movant's favor.  *Lopez v. Council on Am.–Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (citation omitted).

### B.  FOIA

FOIA cases are typically decided on motions for summary judgment.  *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  Summary judgment for the agency is only appropriate when an agency proves that it has fully discharged its FOIA obligations.  *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996).  "FOIA requires federal agencies to make records publicly available upon request unless one of nine exemptions applies."  *Emuwa v. U.S. Dep't of Homeland Sec.*, 113 F.4th 1009, 1012 (D.C. Cir. 2024) (citing 5 U.S.C. §§ 552(a)(3)(A), (b)).  "[W]hile transparency and government accountability are at the heart of FOIA's mandate," these

exemptions "protect important governmental and private interests in confidentiality." *Cabezas v. FBI*, 109 F.4th 596, 602 (D.C. Cir. 2024) (citation omitted). The exemptions "are to be 'narrowly construed.'" *Id.* (quoting *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011)).

The agency has the burden of showing that a FOIA exemption applies. *Watkins L. & Advoc., PLLC v. U.S. Dep't of Just.*, 78 F.4th 436, 450 (D.C. Cir. 2023). Typically, courts "determine whether the statutory obligations of [FOIA] have been met" by relying "on government affidavits." *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982) (per curiam). Although those affidavits are entitled to a presumption of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), they must be reasonably detailed and non-conclusory to justify the agency's withholdings. *See King v. U.S. Dep't of Just.*, 830 F.2d 210, 218–19 (D.C. Cir. 1987).

"If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). A motion for summary judgment should be granted in favor of the FOIA requester, however, where "an agency seeks to protect material which, even on the agency's version of the facts, falls outside the proffered exemption." *Coldiron v. U.S. Dep't of Just.*, 310 F. Supp. 2d 44, 48 (D.D.C. 2004) (quoting *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1433 (D.C. Cir. 1992)).

Finally, even if an agency demonstrates a claimed FOIA exemption applies, the agency may withhold the record "only if it 'reasonably foresees that disclosure would harm an interest protected' by the exemption," *Emuwa*, 113 F.4th at 1013 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)), showing, for instance, "that releasing the specific records sought 'would' chill future internal

discussions,'" *id.* (quoting *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020)).

### III.    ANALYSIS

#### A.  Deliberative Process Privilege

"[I]ntra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency" are exempt from disclosure under FOIA.  5 U.S.C. § 552(b)(5).  "This exemption incorporates privileges available to agencies in civil litigation, including the deliberative-process privilege," which "shields documents 'reflecting advisory opinions, recommendations, and deliberations' that agencies use to make decisions." *Emuwa*, 113 F.4th at 1012–13 (quoting *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 267 (2021)); *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 361 (D.C. Cir. 2021) ("*Reps. Comm.*").  Much like the attorney-client privilege, the deliberative process privilege protects "open and frank discussion" among government officials, *U.S. Dep't of Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 9 (2001), ensuring that "'debate and candid consideration of alternatives within an agency' are not subject to public inspection," *Emuwa*, 113 F.4th at 1013 (quoting *Machado Amadis*, 971 F.3d at 371).

The deliberative process "privilege may only be invoked for documents that are both pre[-]decisional and deliberative." *Reps. Comm.*, 3 F.4th at 362.  "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *Fish & Wildlife Serv.*, 592 U.S. at 268; *see also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  "Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet

only a personal position." *Coastal States*, 617 F.2d at 866; *see also Fish & Wildlife Serv.*, 592 U.S. at 268 (describing protected documents as those the agency does not treat as representing "its final view on the matter" (citation omitted)). The two prongs have "considerable overlap" "because a document cannot be deliberative unless it is predecisional." *Fish & Wildlife Serv.*, 592 U.S. at 268. Although segregable factual information must be disclosed, *Reps. Comm.*, 3 F.4th at 365, factual information that is intertwined with protected communications, *Mead Data Cent., Inc. v. U.S. Dep't of Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977), or otherwise of the type such that disclosure "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency" falls within the privilege. *Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (citation omitted).

To carry its burden, the agency "must demonstrate that (A) the materials at issue are covered by the deliberative process privilege, and (B) it is reasonably foreseeable that release of those materials would cause harm to an interest protected by the privilege." *Reps. Comm.*, 3 F.4th at 361 (citation omitted).

### a.  DOJ-White House Correspondence

Plaintiff argues that the redacted portions of the 10-page email thread between DOJ, Commerce, and White House staff fall outside the deliberative process privilege because the email thread was not pre-decisional. Pl.'s Mot. at 9; *see generally* Def.'s Ex. A. It "post-dates the final December 12, 2017 letter" from DOJ "that officially made the request to the Census Bureau" to adopt a citizenship question. Pl.'s Mot. at 9. Moreover, portions of the email thread that were already released show that the purpose of the correspondence was to seek the White House's view on "notifying" Congress of DOJ's decision and "how that would affect the agenda for the remainder of the week." *Id.* at 9–10. Plaintiff therefore contends that DOJ's "own description of

the emails, as well as their date of transmission" show that the documents were prepared to explain a policy decision already made, not one being contemplated. *Id.* at 9. Defendant responds that: (i) the withheld material was "written before the final actions were taken," Def.'s Mot. at 10, and (ii) the thread concerns "how and when Congress should be notified" about DOJ's request, not explanations of DOJ's decision to do so. *Id.*

The court finds that this category of documents is pre-decisional. When the documents were created is a factor—the emails here were created on December 19, 2017, two days after the final DOJ letter to the Census Bureau. Def.'s Ex. A at 1–10; *Campaign Legal Ctr. II*, 3 F. 4th at 24 (holding that because documents are "created after" a "policy judgment" is not outcome determinative as to whether the documents are "pre[-]decisional"). "But that does end [the] analysis." *Campaign Legal Ctr. II*, 34 F.4th at 24. The D.C. Circuit has held that if a document "communicates a policy decision" that "will have direct consequences for ongoing agency programs and policies," it is pre-decisional. *Id.* (citing *Reps. Comm.*, 3 F.4th at 362–64). The email thread here discussed Commerce seeking assistance from the White House on how best to notify Congress of DOJ's request. A member of the Domestic Policy Council was included to assess the "possible implications for the President's domestic policy agenda." Fifth Brinkmann Decl. ¶ 9. Requesting advice about the rollout of DOJ's decision to Congress and its various implications was an attempt to "define, refine, debate, and flesh out the boundaries of and justifications" of that decision. *Campaign Legal Ctr. II*, 34 F. 4th at 24. The email thread is therefore "not so much to explain the agency's already-decided policy," but an "iterative weighing of legal and policy concerns." *Id.* at 24–25 (quoting *Reps. Comm.*, 3 F.4th at 363).

Accordingly, because the email thread "involved the type of pre[-]decisional discretionary judgments consultations, and policy calls that the deliberative process protects," this category of documents is also exempt under the deliberative process privilege. *Id.* at 28.

### b.  Draft USCCR Interrogatories

Plaintiff argues that Defendant's two redacted comment bubbles on one page of its 24-page draft response to the USCCR's interrogatories are outside the scope of the deliberative process privilege because they are "cosmetic edits or wordsmithing," not substantive policy judgments. Pl.'s Mot. at 12.  One comment responds to a "superficial" proposed edit with no substantive change to the interrogatory response, and the other comment does not suggest any in-line edits and the final draft reflected no change. *Id.*  Defendant argues that the comments are protected because a relevant agency decision need not always involve a formal policy. Def.'s Mot. at 12–13. Moreover, the fact that the then-Associate Deputy Attorney General made the comments makes them deliberative. *Id.*

On their face, the two comments bubbles do not appear to be Defendant "formulating and refining both the actual content of and the public rationale for a new and consequential governmental policy in a way that required balancing the proposed justifications for a citizenship question with other departmental policy and litigation interests." *Campaign Legal Ctr. II*, 34 F.4th at 25.  But the two comments show that the then-Associate Deputy Attorney General "agreed and disagreed with the earlier version of the" draft interrogatory response. *100Reporters v. U.S. Dep't of State*, 602 F. Supp. 3d 41, 64 (D.D.C. 2022).  One comment proposed deleting text stating that DOJ "is not able to catalog all [] examples comprehensively in the time available." Def.'s Ex. B at 28.  The other responds to whether DOJ should direct the USCCR to its attached guidance documents in response to an interrogatory requesting all guidance regarding the enforcement of

sections of the Voting Rights Act.  *Id.*  It appears that, at least, the first proposed change was not adopted.  Fifth Brinkmann Decl. ¶ 20.  "Even if the deciding official agreed with each of the comments," "[c]omments of that type fall squarely within the deliberative process privilege" because they reveal the back-and-forth that led to the final interrogatory response.  *100Reporters*, 602 F. Supp. 3d at 64.  Consequently, the comment bubbles are pre-decisional and deliberative and were appropriately redacted.

### c.  Discussions of Proposed Response to the Washington Post

Defendant argues that the deliberative process privilege protects from disclosure part of its discussion regarding its response to questions from the Washington Post.  Def.'s Mot. at 13–15.[1]

The court agrees.  Numerous trial courts in this District have held that the deliberative process privilege applies to press inquiries, and the court is persuaded by those opinions.  *See Gellman v. Dep't of Homeland Sec.*, 613 F. Supp. 3d 124, 147–48 (D.D.C. 2020); *Am. Ctr. for L. & Just. v. U.S. Dep't of State*, 330 F. Supp. 3d 293, 302 (D.D.C. 2018); *Comm. on Oversight & Gov't Reform v. Lynch*, 156 F. Supp. 3d 101, 111–12 (D.D.C. 2016).

### d.  Draft Correspondence to Representative Gonzalez

Defendant contends that four[2] separate drafts of a letter from then-Assistant Attorney General Stephen Boyd to Representative Vicente Gonzalez are exempt under the deliberative

---

[1] Plaintiff concedes that the discussions regarding proposed response to the Washington Post category is subject to the deliberative process privilege.  Pl.'s Mot. at 8 n.10.  But it does not concede that the other following document categories are: Draft Correspondence to Representative Gonzalez, the Deliberative Discussions Regarding the Census/ACS, and the Draft Correspondence Between JMD and the Department of Commerce.  *Id*. at 8 n.10.  Plaintiff contends that Defendant fails to establish foreseeable harm for each category, which the court addresses later in this memorandum opinion.  *Id*. at 14–18.

[2] Defendant states that this category contains "three separate draft" letters.  Def.'s Mot. at 15.  That excludes one additional letter that this court addressed in *Campaign Legal Ctr. I*, 2020 WL 2849909 at *13, in which it "direct[ed]" Defendant "to provide an additional declaration" so it

privilege because: (1) comparing the draft and the final version of the letter confirm that the differences were "substantive and substantial," and (2) DOJ officials were "providing advice about, and proposed modifications to, evolving versions" of the letter.  Def.'s Mot. at 15–17.  The drafts were prepared in response to a January 9, 2018, letter from Representative Gonzalez to the Attorney General seeking information regarding the addition of the citizenship question.  Fifth Brinkmann Decl. ¶ 30; Plante Decl. ¶¶ 13.

Because the draft letters are substantively the same as the draft Gary Letters, the court again agrees that they were properly withheld and are pre-decisional because they concern Defendant's ongoing discussion about how best to respond to Congressional inquiries.  Fifth Brinkmann Decl. ¶ 33; Plante Decl. ¶¶ 14–16.  Moreover, they are "drafts of an unfinished, work-in-progress policy letter" and "[s]uch proposed drafts of a non-final agency decision that are still undergoing review, debate, and editing constitute deliberative work in progress."  *Campaign Legal Ctr. II*, 34 F.4th at 27 (quoting *Reps. Comm.*, 3 F.4th at 364).

### e.  Deliberative Discussions Regarding the Census and/or ACS

Similarly, Defendant withheld three pages of internal emails where its staff provided "advice, preliminary research, and opinions, and analysis regarding the census or American Community Survey."  Def.'s Mot. at 17 (quoting Fifth Brinkmann Decl. ¶ 35).  It argues that the emails are pre-decisional because they are "part of the ongoing internal [DOJ]deliberations to formulate a position regarding the upcoming 2020 Census."  *Id.*  And they are deliberative because

---

could "meaningfully determine whether the draft" letter response to Representative Gonzalez "properly falls under Exemption 5."  *Id.* (citation omitted).  Defendant complied by filing an additional declaration describing how the letter to Gonzalez that the court referenced is subject to the deliberative process privilege.  Plante Decl. ¶¶ 6–9.

the "internal discussion ultimately led to" Defendant's "decision to request that a citizenship question be added to the 2020 census." *Id.*

Defendants also contend that this document category is "substantively" like the 2016 Memoranda the court found to be covered by the deliberative process privilege in *Campaign Legal Ctr. I*, 2020 WL 2849909 at *9; Def.'s Mot. at 18. Those documents contained "recommendations for new census questions." *Campaign Legal Ctr. I*, 2020 WL 2849909 at *9. Because they were drafted before Defendant "made any decisions concerning whether to suggest new questions," the court found that they were pre-decisional. *Id.* It also found that the documents were deliberative "because they are 'a part of the agency give-and-take of the deliberative process by which the decision itself is made.'" *Id.* (quoting *Vaughn v. Rosen*, 523 F.3d 1136, 1144 (D.C. Cir. 1975)).

The court lacks sufficient information to hold the same regarding this category of documents. Defendant has not provided the court with a copy of the redacted emails. Nor do its declarations describe the withheld emails with sufficient particularity to allow the court to ascertain whether the deliberative process privilege applies. The declaration merely states that the emails are pre-decisional because they form "part of the ongoing internal Department deliberations" regarding the Census and are deliberative because they "ultimately led" to Defendant's request for a citizenship question. Fifth Brinkmann Decl. ¶ 36. A one-paragraph explanation without detail, or the document itself, is insufficient for this court to find that FOIA Exemption 5 protects against disclosure. "Where an agency fails to meet its burden, FOIA provides courts 'a host of procedures' to determine whether the exemption claim is proper, including discovery, further agency affidavits, and *in camera* review of the records in question." *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 55 (D.D.C. 2019) (quoting *Allen v. CIA*, 636 F.2d 1287, 1298 (D.C. Cir. 1980)). The court will direct

Defendant to provide further information regarding the withheld documents and why they are protected by the deliberative process privilege.

### f.  Draft Correspondence Between JMD and Department of Commerce

Finally, Defendant withheld a draft letter "ultimately sent by Arthur E. Gary, then General Counsel for [DOJ's JMD], to Kelly Welsh, then General Counsel to the Department of Commerce, in response to a May 9, 2014 letter from the Department of Commerce."  Fifth Brinkmann Decl. ¶ 40.  Commerce's May 9 letter requested: (i) that Defendant "review the questions asked on its behalf in the American Community Survey," and (ii) that Defendant affirm its "legal authority" to access that information.  *Id.*  Defendant argues that this information is pre-decisional because "internal edits and substantive differences between the draft letter and the final version predated the agency's final" response, and is deliberative because, again, it was part of the exchange of ideas that went to Defendant's response to the citizenship question request.  Def.'s Mot at 18–19.

The court agrees.  The correspondence reflects internal edits regarding a detailed response to Commerce.  Fifth Brinkmann Decl. ¶ 40.  Drafting such letters are "at the heart of the deliberative process privilege."  *Campaign Legal Ctr. II*, 34 F.4th at 27 (quoting *Reps. Comm.*, 3 F.4th at 364).  Consequently, the draft letter to Commerce is protected by the deliberative process privilege.

### B.  Foreseeable Harm

"Finding the deliberative process privilege applicable to . . . the withheld materials does not end the matter.  Under the FOIA Improvement Act of 2016, the government may not withhold even those privileged materials unless it also 'reasonably foresees that disclosure would harm an interest protected by' the FOIA exemption."  *Reps. Comm.*, 3 F.4th at 369 (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)).  An agency cannot meet this burden by relying on "mere speculative or abstract

fears," *id.* (internal quotation marks and citation omitted), nor "generalized assertions," *Machado Amadis*, 971 F.3d at 371 (internal quotation marks and citation omitted). "[W]hat is needed is a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Emuwa*, 113 F.4th at 1015 (quoting *Reps. Comm.*, 3 F.4th at 370).

In *Machado Amadis*, for instance, the agency sufficiently demonstrated harm by explaining in its affidavit that "full disclosure . . .would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals.'" 971 F.3d at 371 (alteration in original) (citation omitted). Likewise, in *Emuwa*, defendant demonstrated harm by showing how releasing the withheld portions of the documents at issue would interfere with the agency's ability to "receive candid advice from its line" officers. 113 F.4th at 1015 (citation omitted). The declarant "laid out contextual considerations tending to support the reasonableness of that judgment, including the 'sensitive' nature" of the adjudications. *Id.* at 1015–16. (citation omitted). The court in *Emuwa* emphasized that the "chilling of candid advice" is the "precise harm that the deliberative-process privilege seeks to prevent." *Id.* at 1016 (passage quoting *Machado Amadis*, 971 F.3d at 371).

### a.  Previous Department Declarations

Plaintiff argues that it is entitled to disclosure of all remaining withheld documents because Defendant's Third and Fourth Brinkmann Declarations contained "boilerplate descriptions of potential harm." Pl.'s Mot. at 15–16. Defendant responds that the declarations suffice to show foreseeable harm. Def.'s Mot. at 22–24. The court largely agrees with Defendant, except for the Draft USCCR Interrogatories category.

Brinkmann explained in her Third Declaration that disclosing Defendant's correspondence with the White House—the first document category at issue here—would be harmful because it would "inhibit the Executive Branch's ability to engage in effect communication[,] decision-making, and inter-agency coordination" by "interfering" with senior officials' ability to "engage in candid discussions and to obtain or offer advice."  Third Decl. of Vanessa R. Brinkmann ¶ 22, ECF No. 48-2 ("Third Brinkman Decl.").  Defendant's draft responses to the Washington Post's inquiries—the third document category at issue—would similarly be harmful because officials would "temper[] their discussion with an eye towards eventual publication of their deliberations." *Id.* ¶ 14.  Disclosing draft correspondence to Representative Gonzalez—the fourth document category—could be harmful because it might hamper the "free flow of information sent back-and-forth between decisionmakers and staff within [DOJ]." *Id.* ¶ 31.  Brinkmann further explained in her Third Declaration how disclosing deliberations about the Census or ACS—the fifth document category—"would severely hamper the efficient day-to-day workings of the Department as individuals would no longer freely ask clarifying questions or share their ideas and advice, via email." *Id.* ¶ 18.  Brinkmann attested the same for the draft letters to Commerce—the last document category—because disclosure would hamper "frank internal dialogues that happens within DOJ before final decisions are made on how to convey Departmental views and advice to counterparts in the Executive Branch." *Id.* ¶ 31.

In Brinkmann's Fourth Declaration, she expanded on her previous justifications for foreseeable harm for all the categories of documents discussed above.  Fourth Decl. of Vanessa R. Brinkmann ¶¶ 16–18, ECF No. 54-1 ("Fourth Brinkman Decl.") (explaining how disclosing Defendant's correspondence with the White House would be harmful because "[i]t is critical that the Executive Branch, including the White House, be able to engage in unfettered internal

discussions on how to respond before settling on final communication with Congress"); *id.* ¶ 10 (explaining how disclosing Defendant's proposed response to the Washington Post would lead to endless comparisons between Defendant's draft and final response); *id.* ¶ 24 (explaining that disclosing draft correspondence to Representative Gonzalez or Commerce would "impair the integrity of the Executive Branch's decision-making process as it would force officials to be judged on what they considered and not what was ultimately included in final correspondence"); *id.* ¶ 14 (explaining how disclosing the discussion regarding the Census/ACS would "also result in public confusion" because it would release "officials' after-the-fact analysis"). Brinkmann's Fifth Declaration expounded further on the foreseeable harm that could result from disclosure of the documents. Fifth Brinkmann Decl. ¶¶ 12–15, 25–42

The three Brinkman declarations, each more detailed than the last, are sufficient to demonstrate foreseeable harm for every document category, except for the Draft USCCR Interrogatories. "To be clear, the court does not read the statutory 'foreseeable harm' requirement to go so far as to require the government to identify harm likely to result from disclosure of *each* of its Exemption 5 withholdings. A categorical approach will do." *Rosenberg v. U.S. Dep't of Def.*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018), *on recons. in part*, 442 F. Supp. 3d 240 (D.D.C. 2020). Defendant describes how policies and communications both inside and outside DOJ and with the Executive Branch would be hampered by disclosure. Those justifications are not "cookie-cutter" descriptions void of a "link between the specified harm and the specific information contained in the material withheld." *Reps. Comm.*, 3 F. 4th at 371 (citation omitted).

### b. Draft USCCR Interrogatories

The court cannot say the same, however, for the two remaining comment bubbles at issue in the Draft USSCR Interrogatories. Def.'s Ex. B at 1–48. Brinkmann's Third Declaration states

that "any further release" in this category "would significantly undermine the ability of [DOJ] officials to freely engage" in candid conversation and "forthright internal development." Third Brinkman Decl. ¶ 26. She maintains—as she did in her Fourth Declaration—that officials would be "less willing to offer novel or alternative stances, opinions, or proposal and less frank in evaluating the work of others." *Id.* Her Fifth Declaration claims that producing the two specific comment bubbles would curb officials from providing feedback and thereby inhibit DOJ's "relationship" with the Legislative Branch. Fifth Brinkmann Decl. ¶ 24.

But Defendant does not connect the risk of disclosing two comments made by an official about two lines of a 24-page draft interrogatory response to the harm of chilling agency communication. Nor does it tie the comments to the even broader harm of weakened inter agency relationships. Claiming that deliberations could be chilled may demonstrate foreseeable harm, *Machado Amadis*, 971 F.3d at 371, but the explanation must show how "in the specific context of the agency action at issue" disclosure would "actually impede those same agency deliberations going forward." *Reps. Comm.*, 3 F.4th at 370. Defendant explained how, in general, disclosing officials' feedback to draft documents could be harmful, but not how feedback on a relatively tiny part of the large document here would result in the same. It also did not explain how such feedback would chill discussions where, as here, Defendant willingly chose to produce 47 pages of the entire 48-page document. Def.'s Ex. B at 1–48. Accordingly, the court cannot find that Defendant adequately demonstrated foreseeable harm for the two comment bubbles in the Draft USCCR category.

### c. Underlying Decision to Request a Citizenship Question

Finally, Plaintiff argues that Defendant cannot meet its foreseeable harm burden because the Supreme Court emphasized in *Department of Commerce v. New York*, 588 U.S. 752 (2019),

that Commerce's rationale for a citizenship question was "incongruent with what the record reveal[ed] about the agency's priorities and decisionmaking process." *Id.* at 785; Pl.'s Mot. at 17. In that case, the Supreme Court held that Commerce's explanation for the citizenship question— that it would facilitate Voting Rights Act enforcement—"seems to have been contrived" and therefore was pretextual under the Administrative Procedure Act. *Id.* at 784–85

Relying on the Supreme Court's holding, Plaintiff argues that the withheld documents here thus "do not reflect any true policymaking" as they are mere "[m]aterials discussing a false and misleading government 'policy.'" Pl.'s Mot. at 17–18 (citation omitted). Defendant responds that Plaintiff incorrectly characterizes all the disputed documents as solely pertaining to the citizenship question. Def.'s Mot. at 24–25. It contends that the policy judgments it exercised regarding the withheld documents "went beyond the single, bottom-line decision to request a citizenship question." Def.'s Reply at 12, ECF No. 75 ("Def.'s Reply") (internal quotation marks and citation omitted). The court agrees with Defendant.

Whether Commerce's voting rights rationale for enacting a citizenship question was declared pretextual "does not undermine the need to protect the confidentiality of *pre-decisional* documents written for consumption *within the agency* itself." *Emuwa*, 113 F.4th at 1018. Various policy judgments are involved in "what rationales, justifications, and limitations to provide—and which to leave out—in articulating an important agency decision." *Campaign Legal Ctr. II*, 34 F.4th at 24. The fact that Commerce's sole rationale was declared unlawful does not otherwise diminish the foreseeable harm DOJ projects from disclosing the withheld documents.

## C.  Segregability

Defendant also seeks summary judgment on the issue of whether it complied with FOIA's segregability requirement. Def.'s Mot. at 22. FOIA requires that "[a]ny reasonably segregable

portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The segregability requirement does not apply to non-exempt material that is "inextricably intertwined" with exempt material, *Mead Data Cent.,* , 566 F.2d at 260, and agencies are entitled to a presumption that they disclosed all reasonably segregable material, *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Defendant asserts that it conducted a line-by-line review of the responsive records to identify information exempt from disclosure. Fifth Brinkmann Decl. ¶¶ 24, 34, 39; Plante Decl. ¶ 17. It produced most of the draft interrogatory responses and related draft Gary emails while this case was on appeal. Def.'s J. Status Rep. at 5, ECF No. 59. Plaintiff has proffered no evidence to contradict that, and the court will therefore also find that Defendant complied with its obligation to segregate exemption from non-exempt information.

## IV.    CONCLUSION

For the foregoing reasons, the court will GRANT IN PART and DENY in part Defendant's and Plaintiff's cross-motions for summary judgment. A corresponding Order will follow shortly.

Date: March 31, 2025

*Tanya S. Chutkan*

TANYA S. CHUTKAN
United States District Judge